IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MARK G. ZAMBRANA, | § | |
| | § | No. 620, 2014 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| | § | for New Castle County |
| v. | § | |
| | § | |
| STATE OF DELAWARE, | § | No. 1302018650 |
| | § | |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: June 10, 2015
Decided: June 30, 2015


Before **STRINE**, Chief Justice, **VALIHURA**, and **VAUGHN**, Justices.

Upon appeal from the Superior Court. **AFFIRMED.**

Bernard J. O'Donnell, Office of Public Defender, Wilmington, Delaware, for Appellant.

Andrew J. Vella, Deputy Attorney General, Department of Justice, Wilmington, Delaware, for Appellee.

**VAUGHN**, Justice, for the Majority:

Defendant-Below/Appellant Mark Zambrana was convicted by the Superior Court following a bench trial on two counts of Sexual Solicitation of a Child under 11 *Del. C.* § 1112A. On appeal, he contends that his admitted misconduct of soliciting his 15 year old neighbor, S.Z., to remove her shirt and bra while he surreptitiously watched her did not qualify as sexual solicitation. He argues that § 1112A requires a defendant to create a physical "depiction" of the victim's nudity in order to be convicted, and that he created no such "depiction" here. We disagree. Although the term "depiction" has multiple definitions, we find that for the purposes of § 1112A, "depiction" encompasses not only tangible manifestations such as photographs and videos, but also includes live conduct. This definition best accords with the statute as a whole and the legislative purpose in enacting it. Applying this definition to the facts before us, we conclude that Zambrana's actions constituted Sexual Solicitation of a Child. Accordingly, we affirm.

## I.     FACTS AND PROCEDURAL HISTORY

S.Z., the child victim in this case, lived next door to Zambrana and his family. S.Z. was close to the Zambrana family: she was a frequent visitor to their home, was friends with Zambrana's stepson who was only one year younger than her, and occasionally accompanied them on family trips. The Zambranas and

S.Z's family also attended the same Congregation of Jehovah's Witnesses. S.Z. described Zambrana's wife as her best friend and likened her to a surrogate mother.

In August 2012, Zambrana, then 26 years old, sent S.Z. a text message asking her to come to his house to try on a shirt he planned to give to his wife as a present. In the message, Zambrana instructed S.Z. to change in the bathroom and remove her bra when trying on the shirt. S.Z. walked next door to Zambrana's house, and into the bathroom where Zambrana told her the shirt would be waiting for her. She then took off her own shirt and bra before putting on the shirt Zambrana had purchased for his wife. Before leaving the bathroom, S.Z. saw a leg behind the shower curtain. She asked several times, "Mark, is that you?" before Zambrana revealed himself, using the curtain to cover most of his naked body.[1] S.Z. asked him what he was doing lurking behind the shower curtain. Zambrana told S.Z. that he had fantasies about her, and that he wanted to see her breasts.

S.Z. ran out of the bathroom and into a bedroom to change back into her clothing. When she tried to leave the house, Zambrana grabbed her and apologized, but also urged her not to tell anyone what had happened. Zambrana warned S.Z. that nobody would believe her accusations, but it would hurt his wife

---

[1] S.Z. testified that "it looked like he had no clothes on him," although his genital area was covered by the curtain. Appellant's Op. Br. App. at A26.

3

and destroy his marriage. Zambrana sent S.Z. additional text messages that evening, apologizing and again urging her not to tell anyone.

The August 2012 incident was apparently not the first time Zambrana had attempted to view S.Z. naked; he asked her in July 2012, also via text message, to try on a shirt for his wife. But that time, S.Z. did not take off her bra, and she did not see Zambrana while she was changing. S.Z. did not report either incident at first, but waited several months before she told Zambrana's stepson what had transpired. She then told her parents, who called the police.

Zambrana was arrested and indicted on two counts of Sexual Solicitation of a Child. He requested a bench trial, which took place on September 4, 2013. Zambrana did not testify at the trial, but the State introduced a video of Zambrana's interview with the police, in which he readily admitted to spying on S.Z. while she was in the bathroom trying on clothes during the two incidents. He also readily admitted during questioning that he spied on S.Z. because he was obsessed with seeing her breasts so that he could masturbate and would fantasize about her. Zambrana stated in his police interview that he had "an obsession with breasts," and his intention was to "see her breasts so I could masturbate after she left."[2]

---

[2] Appellant's Op. Br. App. at A46.

In his closing statement, Zambrana's attorney admitted that his client's intention was "to get sexual gratification" from seeing S.Z. topless.[3] Nevertheless, he argued that Zambrana's viewing S.Z. in the nude for his own sexual pleasure did not fall within the statutory definition of a "prohibited sexual act."[4] The Superior Court rejected Zambrana's statutory interpretation and found him guilty of both counts of Sexual Solicitation of a Child. He was sentenced to eight years and six months imprisonment at Level V, suspended after one year for six months of home confinement at Level IV and two years of probation at Level III. This appeal followed.

## II.    ANALYSIS

On appeal, Zambrana concedes that his conduct was "deviant and shameful," but contends that it did not constitute sexual solicitation under 11 *Del. C.* § 1112A.[5] Although Zambrana did not raise this precise claim before the Superior Court, the State does not argue that our review should be subject to a plain error standard of review and instead asks us to address this issue on its merits.[6] Accordingly, we will consider Zambrana's claim of statutory interpretation *de novo*.[7]

---

[3] Appellant's Op. Br. App. at A54.
[4] *See* 11 *Del. C.* § 1100(7)(i) ("Nudity [constitutes a 'prohibited sexual act'], if such nudity is to be depicted for the purpose of the sexual stimulation or the sexual gratification of any individual who may view such depiction.").
[5] Appellant's Op. Br. at 8.
[6] Zambrana argued before the Superior Court that he did not "engage" S.Z. in a sexual act,

5

"In the construction of a statute, this Court has established as its standard the search for legislative intent. Where the intent of the legislature is clearly reflected by unambiguous language in the statute, the language itself controls."[8] "It is well established that [c]ourts have no authority to vary the terms of a statute of clear meaning or ignore mandatory provisions."[9] "The application of the plain meaning rule, however, often varies from case to case . . . ."[10] If there is more than one reasonable interpretation, "the Court must apply accepted standards of statutory interpretation to arrive at what the legislature intended."[11] "To that end, the statute must be viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are to be avoided."[12] We must read each section in light of all others to produce a harmonious whole and achieve a "sensible result."[13] "We also ascribe a purpose to the General Assembly's use of particular statutory language and construe it against surplusage if reasonably possible."[14]

---

which is distinct from arguing that a "depiction" for the purposes of the statute must entail a physical representation of the sexual act.

[7] *Bd. of Adjustment of Sussex County v. Verleysen*, 36 A.3d 326, 329 (Del. 2012) ("We review the Superior Court's legal determinations, including questions of statutory interpretation, *de novo*.").

[8] *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989) (citations omitted).

[9] *Verleysen*, 36 A.3d at 331 (internal citations and quotations omitted).

[10] *Alfieri v. Martelli*, 647 A.2d 52, 54 (Del. 1994) (citations omitted).

[11] *Hudson Farms, Inc. v. McGrellis*, 620 A.2d 215, 217-18 (Del. 1993) (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985)).

[12] *Spielberg*, 558 A.2d at 293 (citations omitted).

[13] *Zhurbin v. State*, 104 A.3d 108, 113 (Del. 2014) (citation omitted); *Taylor v. Diamond State Port. Corp.*, 14 A.3d 536, 538 (Del. 2011) (citations omitted).

[14] *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, ex. rel. Christiana Bank & Trust Co.*, 28 A.3d 1059, 1070 (Del. 2011).

When interpreting criminal statutes, this Court is further governed by 11 *Del. C.* §§ 203[15] and 221(c).[16] § 203 mandates that criminal statutes are not to be strictly construed, but rather construed "according to the fair import of their terms to promote justice and effect the purposes of the law, [according to the general purposes of the Criminal Code]."[17] § 221(c) mandates that when a word used in the Criminal Code is not defined therein, it is to be given "its commonly accepted meaning, and may be defined as appropriate" to fulfill the general purposes of the Criminal Code.[18]

11 *Del. C.* § 1112A provides, in pertinent part, that an adult is guilty if he intentionally or knowingly "[s]olicits, requests, commands, importunes or otherwise attempts to cause any child to engage in a prohibited sexual act."[19] The

---

[15] *Spielberg*, 558 A.2d at 293.

[16] 11 *Del. C.* § 221(c).

[17] *Spielberg*, 558 A.2d at 293 (quoting 11 *Del. C.* § 203).

[18] 11 *Del. C.* § 221(c). The general purposes of the Criminal Code are set forth in 11 *Del. C.* § 201, which provides:

> The general purposes of this Criminal Code are:
> (1) To proscribe conduct which unjustifiably and inexcusably causes or threatens harm to individual or public interests;
> (2) To give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction;
> (3) To define the act or omission and the accompanying mental state which constitute each offense;
> (4) To differentiate upon reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor; and
> (5) To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted and their confinement when required in the interests of public protection.

[19] 11 *Del. C.* § 1112A(a)(1).

7

term "prohibited sexual act" refers to twelve specific acts enumerated in 11 *Del. C.* § 1100(7),[20] including "[n]udity, if such nudity is to be depicted for the purpose of the sexual stimulation or the sexual gratification of any individual who may view such depiction."[21]

Zambrana does not contest that he solicited S.Z. to remove her clothing for his own sexual gratification. He admitted as much on multiple occasions in the proceedings below. Instead, Zambrana contends that the plain meaning of the word "depiction," which is undefined by the statute, requires preservation of the victim's nude image in some tangible form, such as a picture, painting, or photograph, in order for "nudity" to be a prohibited act under 11 *Del. C.* § 1100(7).[22] Zambrana argues that pursuant to this definition, the act of tricking a child into disrobing for his own sexual gratification is not sufficient to be convicted of sexual solicitation because he did not "intend to or take a picture, video recording, or create any other 'depiction' of [S.Z.'s] nudity."[23]

---

[20] 11 *Del. C.* § 1100(7) states "'[p]rohibited sexual act' shall include":
> a. Sexual intercourse; b. Anal intercourse; c. Masturbation; d. Bestiality; e. Sadism; f. Masochism; g. Fellatio; h. Cunnilingus; i. Nudity, if such nudity is to be depicted for the purpose of the sexual stimulation or the sexual gratification of any individual who may view such depiction; j. Sexual contact; k. Lascivious exhibition of the genitals or pubic area of any child; l. Any other act which is intended to be a depiction or simulation of any act described in this paragraph.

[21] 11 *Del. C* § 1100(7)(i).
[22] Appellant's Op. Br. at 7 (citing various online dictionaries).
[23] Appellant's Op. Br. at 7.

We disagree. Although Zambrana correctly asserts that one accepted definition of "depiction" is a physical representation such as a photograph or video, the term "depiction" can also be defined more broadly to include the presentation of a live performance.[24] This more expansive definition is supported by the U.S. Supreme Court's analysis in *New York v. Ferber*, a key decision in obscenity law that permitted states to ban the sale of child pornography.[25] In *Ferber*, the Court included "live performances" in its discussion of "depictions,"[26] and concluded

_____

[24] As Zambrana points out in his Opening Brief, "depict" means to "show or represent by a drawing, painting, *or other art form . . . .*" Appellant's Op. Br. at 7 (citing OXFORD ONLINE DICTIONARY, http://www.oxforddictionaries.com/us/definition/american_english/depict (last viewed Jan. 21, 2015)) (emphasis added). One such other art form is Performance Art, which "typically features a live presentation to an audience or onlookers . . . ." *Performance Art Definition*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/performance%20art (last visited June 18, 2015). To the extent that other definitions of "depiction" are more limited, they tend to have their origins in the era before photography and motion picture technology. Thus, they hew more closely to the portrayal of an object in words or in painting; for example, the Random House Dictionary defines "depict" as "to represent by or as if by painting; portray; delineate; to represent or characterize in words; describe." *Depict Definition*, DICTIONARY.COM, http://dictionary.reference.com/browse/depict (last visited June 18, 2015). Zambrana does not contend that photographs or video recordings, for example, would not qualify as depictions, even though they are not paintings or characterizations in words.

[25] 458 U.S. 747(1982).

[26] *Id.* at 764-65 ("We note that the distribution of descriptions or other depictions of sexual conduct, not otherwise obscene, which do not involve live performance or photographic or other visual reproduction of live performances, retains First Amendment protection."); *see also id.* at 762-63 ("The value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not *de minimis*. We consider it unlikely that visual depictions of children performing sexual acts or lewdly exhibiting their genitals would often constitute an important and necessary part of a literary performance or scientific or educational work.").

that a depiction can include a live performance of nudity, a sexual act, or a simulation of sexual activity designed for the sexual gratification of the audience.[27]

Because there are at least two reasonable interpretations of the statute, we must choose the one that best accords with the legislative purpose in enacting it and the statute as a whole. In this case, both point toward rejecting Zambrana's interpretation and finding that a "depiction" can include live conduct intended to allow the viewer to observe nudity for the purpose of sexual gratification.

The General Assembly's undisputed intent in enacting 11 *Del. C.* § 1112A was to protect children from sexual predators. According to the synopsis of the House Bill creating the felony of Sexual Solicitation of a Child,[28] the purpose of the act was to "increase the protection afforded to Delaware's children from pedophiles" and facilitate prosecution of adults who solicit children for sexual purposes.[29] In this case, Zambrana does not dispute that he tricked S.Z. into taking her shirt off so that he could watch her for his own sexual gratification. To conclude that the General Assembly intended to punish predators who solicit children to take off their clothes for their own sexual gratification only if the predator creates a tangible depiction of the child directly conflicts with the express purpose of the statute. Adopting this interpretation would allow sex offenders who

---

[27] *Id.* at 764-65.

[28] *See Carper v. New Castle Cnty. Bd. of Ed.*, 432 A.2d 1202, 1205 (Del. 1981) ("The synopsis of the Bill [is] a proper source from which to glean legislative intent . . . .").

[29] 1998 Del. Laws Ch. 467, Synopsis (H.B. 740, 139th General Assembly).

trick or force minors into conducting live performances involving the simulation of nudity for the sexual gratification of the audience to escape prosecution. This was clearly not the intent of the General Assembly.

Second, reading "depiction" only as imagery preserved in physical form, as Zambrana urges, would render other language in Title 11 mere surplusage. Zambrana's suggested definition of "depiction" is expressly set forth as the definition of "visual depiction" in the same provision of Title 11.[30] Specifically, 11 *Del. C.* § 1100(11) defines "visual depiction" as a separate term, as including, but not limited to:

> a. Any image which is recorded, stored or contained on or by developed or undeveloped photographic film, motion picture film or videotape; or b. Data which is stored or transmitted on or by any computer, or on or by any digital storage medium or by any other electronic means which is capable of conversion into a visual image; or c. Any picture, or computer-generated image or picture, or any other image whether made, stored or produced by electronic, digital, mechanical or other means.[31]

If we were to agree with Zambrana and find that the term "depiction" in § 1100(7)(i) is synonymous with "visual depiction," there would be no need for § 1100(11) to separately define "visual depiction."[32] To read "depiction" in

---

[30] 11 *Del. C.* § 1100(11).
[31] 11 *Del. C.* § 1100(11). *Cf. Stiftel v. Malarkey*, 384 A.2d 9, 11 (Del. 1977) ("A statute can define its terms as the lawmakers see fit in order to make clear what is intended.").
[32] *See, e.g.*, *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982) ("The legislative body is presumed to have inserted every provision for some useful purpose and construction, and when different terms are used in various parts of a statute it is reasonable to assume that a distinction between the terms was intended.") (internal quotation marks omitted).

11

§ 1100(7)(i) as "visual depiction" would thus either improperly engraft language into the statute that the General Assembly deliberately excluded,[33] or render the "visual" in "visual depiction" redundant.[34]

Moreover, the distinction between a "depiction" and a "visual depiction" created by the statute is relevant in understanding which specific acts are criminalized under which specific provisions. Reading "depiction" broadly as any presentation of nudity solicited for sexual gratification, whether or not it is "recorded, stored or contained" as required in § 1100(11)'s definition of a "visual depiction," is more consistent with the list of other "prohibited sexual acts" defined in § 1100(7).[35] 11 *Del. C.* § 1100(7) provides eleven "prohibited sexual act[s]" in addition to nudity, which include: sexual intercourse, sexual contact, and lascivious exhibition of the genitals or pubic area of any child.[36] None of the other acts defined in § 1100(7) require a tangible reproduction of the sort that Zambrana argues is required for nudity. Instead, each is a crime of sexual abuse that is

---

[33] *See id.* ("Similarly, where a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the Legislature was aware of the omission and intended it. The courts may not engraft upon a statute language which has been clearly excluded therefrom by the Legislature.").

[34] *See United States v. Alaska*, 521 U.S. 1, 59 (1997) ("The Court will avoid an interpretation of a statute that 'renders some words altogether redundant.'") (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995)).

[35] *Cf. Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (applying the canon of interpretation under which "a word is known by the company it keeps (the doctrine of *noscitur a sociis*)"); *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) ("The traditional canon of construction, *noscitur a sociis*, dictates that words grouped in a list should be given related meaning.") (citations and quotations omitted).

[36] 11 *Del. C.* § 1100(7).

punishable upon completion of the act.[37]  It would therefore not be "sensible"[38] to conclude that the act of soliciting nudity requires some manner of recording or reproduction.[39]

It is also significant that Zambrana was convicted under § 1112A, which criminalizes only the performance of the underlying sexual acts.  Recording those acts—or distributing or possessing that recording—is criminalized under a separate statutory provision within Title 11.[40]  As the U.S. Supreme Court observed in *Ferber*, the nature of the two statutory provisions is distinct: the harm to a child from being "visually depicted" in pornographic material is different than the harm from the underlying act of sexual abuse by itself, even though the two are "intrinsically related."[41]  Finding that the "depiction" of nudity requires a physical

---

[37] The inclusion of qualifiers to "nudity" in the statute was likely meant to exempt acts involving nudity that were not intended to be sexual in nature, for example, when a parent or caretaker undresses a child for bathing. *Cf. Pennsylvania v. Davidson*, 938 A.2d 198, 214 (Pa. 2007) (describing Pennsylvania's analogous statutory definition in a prosecution for possession of child pornography, and observing that "[t]he 'nudity' qualifier is just that—a qualifier—restricting the statute's reach to only those forms of nudity that are depicted for sexual stimulation or gratification. Consequently, the statute does not reach innocent family or artistic images of minors in a state of simple nudity, *e.g.*, a photograph of a baby's bath.").

[38] *See Zhurbin*, 104 A.3d at 113.

[39] Appellant's Rep. Br. at 6-7.

[40] *See* 11 *Del. C.* § 1108 (defining sexual exploitation as, among other things, "knowingly, photograph[ing] or film[ing] a child engaging in a prohibited sexual act or in the simulation of such an act, or otherwise knowingly creat[ing] a visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act); § 1109 (prohibiting "dealing in child pornography," which includes transporting "any other visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act"); § 1111 (prohibiting "possession of child pornography," which occurs when a "person knowingly possesses any visual depiction of a child engaging in a prohibited sexual act or in the simulation of such an act").

[41] *Ferber*, 458 U.S. at 759 ("[T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.").

representation of that nudity would thus collapse the intentional distinction in the statute between the abuse itself and the creation of pornographic material portraying the underlying abuse.

Adopting Zambrana's proposed interpretation would conflict with the General Assembly's clearly pronounced purpose in enacting the statute and render other statutory language superfluous. Thus, while we disagree with the concurring opinion's view that a "depiction" can be a mental image, we adopt a broader definition of "depiction," which encompasses not only tangible representations, but also presentations of live conduct. Based on the facts of this case, Zambrana's actions fall within the scope of this definition. Zambrana solicited S.Z. into giving him an unintended and unknowing private performance in which she engaged in "nudity" by showing her breasts "for the purpose of [Zambrana's] sexual stimulation or . . . sexual gratification."[42] Zambrana, playing the role of both solicitor and viewing party, intentionally presented S.Z.'s nudity as a live performance to himself, qualifying it as a "depiction" under 11 *Del. C.* § 1100(7). Accordingly, the Superior Court did not err in finding him guilty of Sexual Solicitation of a Child.

### III. CONCLUSION

The judgment of the Superior Court is **AFFIRMED**.

---

[42] 11 *Del. C.* § 1100(7).

14

**STRINE,** Chief Justice, concurring:

I agree with the lucid and well-crafted opinion of the Court, but I feel it would be useful to deal more directly with the defendant's argument that he is not guilty of sexual solicitation under 11 *Del. C.* § 1112A because he did not capture a physical depiction of his victim's nudity. Zambrana's admitted intention was to create a "mental image" of S.Z. without her clothing, so that he could commit it to memory and then to call it to mind when he masturbated. In other words, Zambrana tricked a minor into exposing herself to him so he could use the image later for his own sexual gratification. Because I think a reasonable reading of "depiction" includes painting a mental image, as Zambrana did here, and interpreting the term broadly best accords with the statute as a whole and the legislative purpose in enacting it, I agree that his conviction should be affirmed.

Zambrana argues that he did not create a physical "depiction" of his victim's nudity, which he contends is required to be convicted under the statute. Zambrana argues that the "plain, ordinary meaning" of "depiction" is "to show (someone or something) in a picture, painting, photograph, etc."[43] Thus, he contends that tricking a victim into taking off her clothes for the purposes of his

---

[43] Opening Br. at 7.

own sexual gratification is insufficient because he did not "intend to or take a picture, video recording, or create any other 'depiction' of [S.Z.'s] nudity."[44]

But, as the Court's opinion points out, "depiction" has more than one meaning, and is broad enough to encompass descriptions in words and other intangible portrayals.[45] Thus, a reasonable reading of "depiction" in this context could include painting a mental image,[46] which can be as potent for the person seeing it in his "mind's eye" as visual imagery or written language.[47] And Zambrana admitted that he intended to trick S.Z. into allowing him to see her breasts, precisely so that he could take a mental photograph of them to view later with his mind's eye.

In my view, the Court is correct that a live performance could constitute a depiction, but I believe it is respectful to deal more directly with the precise facts of the case as contained in Zambrana's admissions and his argument that because he did not snap a photo or take a video of his victim, he did not "depict" her

---

[44] *Id.*

[45] *See* Opinion of the Court, n.24.

[46] *Cf.* 62A Am. Jur. 2d *Privacy* § 160 (describing "false-light cases in which *depiction* or portrayal of persons as guilty of crimes against societal order have included allegations") (emphasis added); 48 C.J.S. *Intoxicating Liquors* § 486 ("The word 'intoxicated' is one of those terms used to *depict* a physical condition which probably defies precise definition . . . .") (emphasis added).

[47] "Recognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his 'mind's eye' a face or a figure which he is hard put to describe adequately in words." *Watson v. State*, 349 A.2d 738, 740 (Del. 1975) (internal quotation marks omitted) (quoting *Russell v. United States*, 408 F.2d 1280, 1284 (D.C. Cir. 1969), *cert. denied*, 395 U.S. 928 (1969)).

nudity.  Under 11 *Del. C.* § 1112A, read in light of the legislative purpose of the Act and the general purpose of the Criminal Code  as set forth in 11 *Del. C.* § 201, I would find that a mental image like the one Zambrana admittedly took constitutes a depiction of S.Z.'s nudity, and his conviction is therefore valid.