# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

THE DELAWARE DIVISION OF
THE PUBLIC ADVOCATE,

    Appellant,

  v.

THE DELAWARE PUBLIC
SERVICE COMMISSION,

    Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. N15A-12-002 AML

Submitted: September 13, 2016
Decided: December 30, 2016

## MEMORANDUM OPINION

Regina A. Iorii, Deputy Attorney General, STATE OF DELAWARE, DEPARTMENT OF JUSTICE, Wilmington, Delaware; *Attorney for the Delaware Division of the Public Advocate.*

Brenda R. Mayrack, Deputy Attorney General, STATE OF DELAWARE, DEPARTMENT OF JUSTICE, Dover, Delaware; *Attorney for the Delaware Public Service Commission.*

**LeGROW, J.**

This is an appeal from a decision of the Delaware Public Service Commission. The appellant, the Delaware Division of the Public Advocate, contends the Commission erred in construing a statute that governs the circumstances under which utility companies may be exempt from a state law requiring them to purchase a percentage of their electric supply from renewable resources. That statute grants the Commission explicit authority to promulgate regulations regarding procedures for how the minimum renewable energy purchase requirement may be frozen. Despite this explicit statutory grant of rule-making authority, the Commission concluded it nevertheless lacks the authority to promulgate the type of regulations the DPA contends the Commission should have adopted. I conclude the Commission's interpretation of the statute constituted legal error and therefore reverse and remand.

## BACKGROUND AND PROCEDURAL HISTORY

In 2005, the Delaware General Assembly enacted the Renewable Energy Portfolio Standards Act, 26 *Del. C*. §§ 351-364 ("REPSA"), requiring all regulated Delaware electric utilities to purchase a percentage of their electric supply from renewable and solar resources. Those purchase requirements are referred to herein as the "minimum renewable energy purchase requirements." In 2010, the General Assembly amended Section 354 of REPSA to permit the Department of Natural Resources and Environmental Control ("DNREC") and the Public Service

1

Commission (the "Commission"), "in consultation" with each other, to freeze the minimum renewable energy purchase requirements for regulated utilities under certain circumstances, namely when the cost of compliance exceeds certain thresholds. As amended, Section 354(i) and (j) provides:

> (i) [DNREC]* in consultation with the Commission, may freeze the minimum cumulative solar photovoltaics requirement for regulated utilities if [DNREC]* determines that the total cost of complying with this requirement during a compliance year exceeds 1% of the total retail cost of electricity for retail electricity suppliers during the same compliance year. In the event of a freeze, the minimum cumulative percentage from solar photovoltaics shall remain at the percentage for the year in which the freeze is instituted. The freeze shall be lifted upon a finding by [DNREC], in consultation with the Commission, that the total cost of compliance can reasonably be expected to be under the 1% threshold. The total cost of compliance shall include the costs associated with any ratepayer funded state solar rebate program, SREC purchases, and solar alternative compliance payments.

> (j) [DNREC] in consultation with the Commission, may freeze the minimum cumulative eligible energy resources requirement for regulated utilities if [DNREC] determines that the total cost of complying with this

---

* The statute refers to the State Energy Coordinator, who is an employee of DNREC, and the Delaware Energy Office, which is or was a part of DNREC. I refer to both the State Energy Coordinator and the Delaware Energy Office as DNREC for clarity. The parties agree that the statutory references to the State Energy Coordinator and the Delaware Energy Office are to DNREC for all practical purposes. *See* Appellant's Opening Br. 1 n.2; Appellee's Resp. Br. 5 n.4.

requirement during a compliance year exceeds 3% of the total retail cost of electricity for retail electricity suppliers during the same compliance year. In the event of a freeze, the minimum cumulative percentage from eligible energy resources shall remain at the percentage for the year in which the freeze is instituted. The freeze shall be lifted upon a finding by [DNREC], in consultation with the Commission, that the total cost of compliance can reasonably be expected to be under the 3% threshold. The total cost of compliance shall include the costs associated with any ratepayer funded state renewable energy rebate program, REC purchases, and alternative compliance payments.

Also in 2010, the General Assembly added subsection (b) to Section 362 of REPSA. That new subsection pertinently provides:

> For regulated utilities, the Commission shall further adopt rules and regulations to specify the procedures for freezing the minimum [renewable energy purchase][1] requirement as authorized under § 354(i) and (j) of this title . . . .

Section 362 is the only explicit statutory reference to rule-making authority relating to freezing the minimum renewable energy purchase requirements.

In May 2011, the Commission issued regulations purporting to implement Section 354(i) and (j) in accordance with the Commission's authority under Section 362(b) (the "Commission's Regulations"). These regulations state:

---

[1] The statute refers only to the "cumulative solar photovoltaic" requirement in Section 354(i), but the parties agree that Section 362(b) includes both the solar photovoltaic requirement and the eligible energy resources requirement.

3.2.21 The minimum percentages from Eligible Energy Resources and Solar Photovoltaic Energy Resources as shown in Section 3.2.1 and Schedule 1 may be frozen for CRECs as authorized by, and pursuant to, 26 Del.[]C. § 354(i)-(j). For a freeze to occur, [DNREC] must determine[] that the cost of complying with the requirements of this Regulation exceeds 1% for Solar Photovoltaic Energy Resources and 3% for Eligible Energy Resources of the total retail cost of electricity for Retail Electricity Suppliers during the same Compliance Year. The total cost of compliance shall include the costs associated with any ratepayer funded state renewable energy rebate program, REC and SREC purchases, and ACPs and SACPs alternative compliance payments.

3.2.21.1 Once frozen, the minimum cumulative requirements shall remain at the percentage for the Compliance Year in which the freeze was instituted.

3.2.21.2 The freeze may be lifted only upon a finding by [DNREC], in consultation with the Commission, that the total cost of compliance can reasonably be expected to be under the 1% or 3% threshold, as applicable.

On October 2, 2015, the Delaware Public Advocate (the "DPA") filed a petition with the Commission to re-open the rule-making docket and promulgate additional regulations. Specifically, the DPA sought to amend the Commission's Regulations to specify when a freeze of the minimum renewable energy purchase requirements may be declared under Section 354 (i) and (j) (the "DPA's Petition"). In other words, the DPA sought detailed regulations from the Commission

4

regarding how and when the cost of compliance with the minimum purchase requirements and the total retail cost of electricity would be calculated.

The Caesar Rodney Institute ("CRI") filed a petition supporting the DPA's Petition (considered jointly with the DPA's Petition, the "Petition"). DNREC then filed a petition to intervene in the docket, and the Commission staff and DNREC jointly opposed the Petition. The DPA and CRI filed a joint response, and eight Delaware House of Representative members filed a letter supporting the Petition. Dr. Jeremy Firestone and the Mid-Atlantic Renewable Energy Coalition filed written comments opposing the Petition.

On November 3, 2015, at its regularly scheduled meeting, the Commission heard oral argument from the parties, deliberated, and voted to deny the Petition.[2] The Commission issued its written decision, dated December 3, 2015 (the "Commission's Order"), denying the Petition and granting DNREC's petition for leave to intervene.[3] In its Order, the Commission interpreted Section 354(i) and (j) as providing "DNREC with the primary responsibility for issuing regulations governing when a freeze of the minimum percentages of eligible energy resources and solar photovoltaics may be declared."[4]

---

[2] *In re The Del. Div. of the Public Advocate*, PSC Docket No. 15-1462, at 49-50 (PSC Hearing Nov. 3, 2015) (TRANSCRIPT).
[3] Order No. 8807.
[4] *Id*. at ¶ 19.

On December 7, 2015, the DPA appealed the Commission's Order. After the appeal was filed, DNREC issued, on January 1, 2016, regulations governing when to freeze the minimum renewable energy purchase requirements ("DNREC's Regulations").[5] This Court held oral argument on September 13, 2016.

## THE PARTIES' CONTENTIONS

The DPA argues the Commission erred in two ways. First, the Commission erroneously interpreted Sections 354 and 362(b) to give DNREC the primary authority to promulgate regulations specifying the procedures for freezing REPSA's minimum renewable energy purchase requirements. Second, the Commission improperly delegated to DNREC the Commission's statutory authority to promulgate regulations specifying "procedures for freezing" the minimum renewable energy purchase requirements. The DPA contends the Commission abdicated this authority by failing to promulgate detailed regulations specifying the procedure for freezing the minimum renewable energy purchase requirements. Instead, the DPA argues, the Commission promulgated regulations that "simply regurgitate the language of 26 *Del. C*. §§ 354 (i) and (j),"[6] which, according to the DPA, is not sufficient to comply with Section 362(b).

The Commission, on the other hand, argues the General Assembly gave DNREC, not the Commission, the authority to promulgate regulations specifying

---

[5] Appellee's Resp. Br. 8.
[6] Appellant's Reply Br. 3.

when to freeze the minimum renewable energy purchase requirements. The Commission contends it appropriately declined to address the substantive calculations of when a freeze should be implemented and the calculation of the cost of compliance because that calculation specifically is assigned to DNREC in Section 354(i) and (j).[7] The Commission contends DNREC is to determine the cost of compliance however it chooses and then, if DNREC determines the cost exceeds the statutory thresholds, the Commission's Regulations establish the procedures for further action.[8] In other words, the Commission asserts that Section 362 gives it authority to adopt *procedural* regulations, which apply only if DNREC first determines the cost thresholds of Section 354 are triggered. It is DNREC, the Commission contends, that has implicit statutory authority to adopt regulations relating to how the *substantive* calculations required by Section 354(i) and (j) will be made.[9]

The Commission further contends it did not abdicate any authority because the Commission's Regulations at least minimally complied with the obligation imposed by Section 362(b) to specify the procedures for freezing the minimum renewable energy purchase requirements as authorized under § 354(i) and (j).[10] In addition, the Commission posits, since the authority and responsibility for

---

[7] Appellee's Resp. Br. 11.
[8] *Id*. at 14.
[9] *Id*.
[10] *Id*. at 10 (citing 26 Del. Admin. C. § 3008-3.2.21).

calculating the cost of renewable energy compliance was given to DNREC, the Commission would be exceeding its statutory authority by promulgating additional regulations to specify when to freeze, particularly because, at the time the DPA filed its Petition, DNREC was completing a lengthy process of promulgating its own regulations governing when to freeze the minimum renewable energy purchase requirements.[11]

## STANDARD OF REVIEW

In reviewing a case decision from an administrative agency, this Court "must determine whether the agency ruling is supported by substantial evidence and free from legal error."[12] The Court defers to the Commission's fact-finding if it is supported by sufficient evidence, "tak[ing] into account the 'specialized competence of the Commission.'"[13] This Court, however, "may not simply defer to an agency's statutory interpretation."[14] Rather, the Court "must perform its own statutory interpretation," while "accord[ing] due weight . . . to an agency['s] interpretation of a statute administered by it."[15]

---

[11] Appellee's Resp. Br. 8 ("These regulations took effect on January 11, 2016.") (citing 19 Del. Reg. 643 (Jan. 2016) (Final); 7 Del. Admin. C. § 2102).

[12] *Public Water Supply Co. v. DiPasquale*, 735 A.2d 378, 381 (Del. 1999) (citing *Dept. of Labor v. Med. Placement Servs., Inc.*, 457 A.2d 382, 383 (Del. Super. 1983), *aff'd* 467 A.2d 454 (Del. 1983)); *see also* 29 *Del. C.* § 10142.

[13] *Reybold Grp. v. Public Serv. Com'n*, 2007 WL 2199677, at *5 (citing 26 *Del. C.* § 510; 29 *Del. C.* § 10142).

[14] *Reybold Grp.*, 2007 WL 2199677, at *5 (citing *DiPasquale*, 735 A.2d at 382-83).

[15] *Reybold Grp.*, 2007 WL 2199677, at *5 ("When the issue is one of agency interpretation of statutory law, and application of that law to undisputed facts, this Court's review of the agency's

8

# ANALYSIS

In construing a statute, this Court must search for the legislative intent.[16] Courts have no authority to depart from the clear meaning of a statute or ignore its mandatory provisions.[17] If, however, there is more than one reasonable interpretation, the Court applies accepted methods of statutory interpretation to determine the legislature's intent.[18] "To that end, the statute must be viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are to be avoided."[19] This Court "also ascribe[s] a purpose to the General Assembly's use of particular statutory language and construe[s] it against surplusage if reasonably possible."[20]

## A. DNREC's Regulations cannot moot the DPA's appeal.

The Commission first argues that the DPA's appeal is moot because DNREC promulgated rules regarding the cost calculations under Section 354 and adopted them in January 2016. The fallacy in this argument is apparent. One

decision is plenary, and it is not bound by the agency's conclusion.") (citing *DiPasquale*, 735 A.2d at 380-81 (citing *Stoltz Mgmt. Co., Inc. v. Consumer Affairs Bd.*, 616 A.2d 1205, 1208 (Del. 1992))); *see also E.I. Du Pont Nemours Co., Inc. v. Shell Oil* Co., 498 A.2d 1108, 1113 (Del. 1985).

[16] *Zambrana v. State*, 118 A.3d 773, 775 (Del. 2015) (citing *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989)).

[17] *Zambrana*, 118 A.3d at 775 (citing *Bd. of Adjustment of Sussex County v. Verleysen*, 36 A.3d 326, 331 (Del. 2012)).

[18] *Zambrana*, 118 A.3d at 775 (citing *Hudson Farms, Inc. v. McGrellis*, 620 A.2d 215, 217-18 (Del. 1993) (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985))).

[19] *Zambrana*, 118 A.3d at 775 (citing *Spielberg v. State*, 558 A.2d 291, 293 (Del. 1989)).

[20] *Zambrana*, 118 A.3d at 775 (citing *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1070 (Del. 2011)).

agency cannot, through its own purportedly invalid rule-making, moot a challenge to another agency's alleged failure to engage in rule-making. To conclude otherwise would effectively grant an agency both legislative and judicial powers. If (as the DPA argues) the Commission had exclusive statutory authority to promulgate regulations relating to Section 354(i) and (j), and failed to do so, DNREC could not usurp that rule-making authority by issuing its own regulations and then moot a legal challenge intended to establish which agency was charged with adopting regulations. DNREC either has rule-making authority under the statute, in which case DPA's appeal fails on its merit, or DNREC lacks rule-making authority, in which case DPA's appeal may prevail. Either way, the fact that DNREC adopted its own regulations has no bearing on the DPA's appeal regarding the Commission's Regulations.

**B. The Commission incorrectly interpreted REPSA to give DNREC the authority to promulgate regulations specifying the procedures for freezing the minimum renewable energy purchase requirements under REPSA.**

Under REPSA, the General Assembly gave DNREC the ability to calculate cost caps and determine, in consultation with the Commission, whether a freeze should be implemented and subsequently lifted; it did not give DNREC the authority to promulgate regulations specifying how the cost of compliance with the renewable energy mandates and the total retail cost of electricity are calculated. Rather, the General Assembly afforded the Commission exclusive authority to

10

establish procedures for freezing the requirements. To conclude DNREC has rule-making authority under the statute would collapse the plain, and presumably intentional, statutory distinction between creating the regulation and calculating the cost cap.

Section 362(b) states "the Commission shall further adopt rules and regulations to specify the procedures for freezing the minimum [renewable energy purchase] requirement as authorized under § 354(i) and (j) of this title." This is the only explicit rule-making authority granted by the General Assembly. According the statutory language its plain and ordinary meaning, I conclude that the General Assembly intended that the Commission have exclusive authority to promulgate regulations for freezing the minimum renewable energy purchase requirements, including regulations regarding when and how the calculations will be made. Based on those regulations, DNREC performs the calculations to determine whether the cost caps have been exceeded.[21] The Commission and DNREC then consult to determine whether a freeze should be declared and, if so, when it should be lifted.[22]

The Commission contends the General Assembly also intended DNREC to have rule-making authority, calling attention to the use of the word "procedures" in Section 362(b). This interpretation, however, is not reasonable. First, to conclude

---

[21] *See* 26 *Del. C.* §354(i) and (j).
[22] *Id.*

11

DNREC was given implicit rule-making authority would be at odds with the fact that the General Assembly gave explicit rule-making authority and gave it only to the Commission. Moreover, if the General Assembly intended to draw a distinction between procedural and substantive regulations, it is reasonable and logical to conclude such distinction would be explicit in the statute or, at a minimum, reflected in the legislative history. The Commission, however, can point to no such distinction made by the General Assembly. The most (in fact only) reasonable interpretation, taking into account the legislative scheme and the statutory language, is that the General Assembly intended the Commission to adopt all regulations necessary to implement Section 354(i) and (j.) To conclude otherwise renders the language of Section 362 meaningless.[23] In short, the specific grant of rule-making authority in Section 362(b) does not support the conclusion that the General Assembly intended implicitly to grant DNREC other, unspecified rule-making authority.

---

[23] *See Martin v. Am. Potash & Chem. Corp.*, 92 A.2d 295, 299 (Del. 1952) ("It is elementary that in construing a statute every clause must be given effect . . . and plaintiffs' proposed construction of Section 28 would render the phrase 'at private sale' superfluous and meaningless. Such a construction is therefore unacceptable."); *see also Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) ("An agency does not acquire special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language.").

## CONCLUSION

For the foregoing reasons, the Commission's Order is **REVERSED** and **REMANDED** for proceedings consistent with this decision.[24] **IT IS SO ORDERED**.

---

[24] In their briefs, the parties identified a secondary issue: whether the Commission could delegate its rule-making authority to DNREC. The Commission conceded at oral argument that, if the Court concluded Section 362(b) gave the Commission exclusive rule-making authority, the Commission could not delegate that authority.