**In the Matter of the APPRAISAL OF FORD HOLDINGS, INC. PREFERRED STOCK.**

**Civil Action No. 14852.**

Court of Chancery of Delaware, New Castle County.

Submitted: Feb. 19, 1997.
Decided: March 20, 1997.

Edward M. McNally and Lewis H. Lazarus, Morris, James, Hitchens & Williams, Wilmington (Jonathan A. Levy, U.S. Bancorp Law Division, Portland, OR, of Counsel), for Petitioners.

William O. LaMotte, III, Karen Jacobs Louden and Jessica Zeldin, Morris, Nichols, Arsht & Tunnell, Wilmington, for Respondent.

ALLEN, Chancellor.

This is an appraisal proceeding under Section 262 of the Delaware General Corporation Law. It arises from a merger in which Ford Holdings, Inc. ("Holdings"), a subsidiary of Ford Motor Company, merged with Ford Holdings Capital Corporation, its own wholly owned subsidiary. The effect of the merger was to cash-out various types and series of Holdings' preferred stock. In each instance, the holders of preferred were paid the liquidation value of their security, plus a "merger premium" if the certificate creating the preferred called for it, plus any accumu-

lated and unpaid dividends. Holdings asserts that under the various documents creating these securities that is exactly what the holders of the preferred stock are entitled to in the event of a merger. Plaintiffs in this appraisal action are certain holders of preferred stocks of Holdings. They seek a judicial appraisal of the "fair value" of their shares at the time of the merger, which they contend is higher than the amount Holdings calculated as due to them.

Pending before the court are motions for summary judgment by plaintiffs, U.S. Bancorp and Cede & Co., and certain additional shareholders,[1] and by defendant, Holdings. For the reasons that follow, I conclude that properly expressed terms of a Certificate of Designation of preferred stock may establish the consideration to which holders of the stock will be entitled in the event of a merger and, when the documents creating the security do so, that the amount so fixed or determined constitutes the "fair value" of the stock for the purposes of dissenters' rights under Section 262 of the Delaware General Corporation Law. With respect to some series of Holdings, preferred stock, I conclude that the documents creating the security do so limit merger consideration; for others, in my judgment, they do not. Thus, the motion of Holdings will be granted in part.

**I.**

Holdings was incorporated in 1989 to engage in the business of consumer and commercial lending, insurance underwriting, and equipment leasing. All of its common stock is held, directly or indirectly, by Ford Motor Company. Between October 1990 and June 1995, Holdings issued twenty series of preferred stock to the public. The preferred shares were of two different types: (1) Flexible Rate Auction Series A through P ("Auction Preferred"), and (2) Cumulative Preferred Series A through D ("Cumulative Preferred"). The specific terms of each series of preferred stock were contained in its

---

1. Certain holders of Cumulative Preferred Series A–D shares were permitted by order of this court to participate in this proceeding although they have not elected to be represented by counsel in this action. *See* Order After Initial Hearing (Nov. 26, 1996).

Certificate of Designations ("Designations"). All series were nonconvertible and nonredeemable, had cumulative dividends, and had liquidation preferences equal to par plus any accumulated and unpaid dividends. The Certificates of Designations setting forth the terms, preferences, and limitations of the stock were not identical.

The Cumulative Preferred stock bore a stated dividend, payable quarterly. The returns on the Auction Preferred were determined in a more complex fashion. Initially these shares had a set dividend rate for a specified period. At the end of a period, initially forty-nine days, a designated agent (the "Term Selection Agent") would reset the term and announce whether the shares would also carry any "merger premium". (A merger premium is defined as *any amount of money above the stated liquidation preference paid to holders of the Auction Preferred in the event of a merger or consolidation*). Once the length of the period or term of the continuing investment was set by the Term Selection Agent and the existence of a merger premium was established, investors entered bids in a Dutch auction stating the interest or dividend rate that they would require to invest or continue their investment and how much they wanted to invest at that level. The company, thus, could refinance the whole of the issue (or series) at the lowest cost that the market (auction market) would permit. Those holders who demanded a return higher than the rate that the auction generated for the security for the next period would then sell the security to those willing to invest at that rate. They would get the liquidation value (par) plus any unpaid dividend. If the bidders at the new yield were insufficient to take all current holders out of the security who wanted to exit the investment, Holdings was precluded from altering the terms of the shares for the next period. In this situation, the period would be the minimum, forty-nine days, and the dividend rate would be set at a high rate according to a formula in the Certificate of Designations. This financing technique is designed to afford the issuer access to capital, through an equity instrument, that bears a resettable rate of interest.

Bancorp purchased 100 shares of Auction Preferred Series D shares on February 14, 1995 in the secondary market. The terms of these shares at that time included a five year period and no merger premium. Later that year, on October 16, 1995, Holdings' board of directors approved a plan to merge Holdings with Ford Holdings Capital Corporation. The merger was effectuated on December 20, 1995. In the merger, all of Holdings' preferred stock was eliminated and converted to a right to receive cash.

As a holder of Auction Preferred Series D, Bancorp did not accept the merger consideration; it dissented and filed this suit seeking an adjudication of the fair value of its shares. Certain holders of the Cumulative Preferred joined Bancorp's action seeking appraisal rights. Holdings then filed a motion for summary judgment asserting that it is clear from the language of the Designations that the holders of the preferred shares are entitled in the event of a merger to consideration fixed in those documents and not to any other amount.

## II.

Bancorp makes two arguments to support its claim that it is entitled to an appraisal proceeding. **First**, it asserts, that appraisal rights are mandated by statute and cannot be eliminated by provisions in the corporate charter or the Designations. **Second**, Bancorp alleges that even if it is permissible to contract away one's right to appraisal, the terms of the Designations of the Cumulative Preferred and the Auction Preferred do not specify that petitioners have done so.

I turn to the statutory argument first, and conclude that insofar as preferred stock is concerned, the provisions of Section 262 may be modified by provisions of the certificate of rights, etc., which define the security. I then turn to the contractual argument and conclude (1) that modification of the statutory right must be express or at least very clearly implied and (2) that with respect to the Cumulative Preferred, that test is satisfied, but with respect to the Auction Preferred Series D, it is not. Therefore, I conclude that the Series D Auction Preferred cannot be said at this time to be foreclosed from proving that

the fair value of their security is in excess of the merger consideration.

## III. The Designations Defining the Security May, In Effect, Eliminate Statutory Appraisal Rights by Clearly Defining Rights of Holders in the Event of a Merger

■ Delaware's General Corporation Law, like most general laws of incorporation in the twentieth century U.S., is an *enabling statute*. That is, the philosophy that underlies it is that the public good is advanced by the provision of an inexpensive mechanism that allows all individuals to achieve the benefits that the corporate form provides (most importantly, centralized management and entity status, with its characteristics of indefinite duration and separately salable share interests) through establishing management and governance terms that appear advantageous to those designing the organization. Thus, unlike the corporation law of the nineteenth century, modern corporation law contains few mandatory terms; it is largely enabling in character. It is not, however, bereft of mandatory terms. Under Delaware law, for example, a corporation is required to have an annual meeting for the election of directors;[2] is required to have shareholder approval for amendments to the certificate of incorporation;[3] must have appropriate shareholder concurrence in the authorization of a merger;[4] and is required to have shareholder approval in order to dissolve.[5] Generally, these mandatory provisions may not be varied by terms of the certificate of incorporation or otherwise.

Among these mandatory provisions of Delaware law is Section 262, the appraisal remedy. That Section provides in part:

(a) Any stockholder of a corporation of this State who holds shares of stock on the date of a demand pursuant to subsection (d) ... who continuously holds such shares through the effective date of the merger ..., who has otherwise complied with subsection (d) ... and who has [not] voted in favor of the merger ... *shall be entitled to an appraisal ... of the fair value of his stock...* (Emphasis added).

It is this provision upon which petitioners rely. They satisfy each of the statutory conditions to an appraisal of the "fair value" of their shares, they say. They have evidence, they say, that the market price of their securities was greater than the merger consideration. They add that they have a right to present that evidence and for the court to determine the "fair value" of their shares in light of it and other indicia of value as of the merger date.

Defendant asserts that the Designations of the Cumulative Preferred and the Auction Preferred limit the appraisal rights of holders of these shares. Specifically, defendant contends that the Designations define the consideration to which the holders are entitled in the event of a merger. According to defendant, while shareholders may be statutorily entitled to an appraisal of fair value, the instrument creating their security fixes that value.[6]

■ One question to be resolved then, is whether purchasers of preferred stock can, in effect, contract away their rights to seek judicial determination of the fair value of their stock, by accepting a security that explicitly provides either a stated amount or a formula by which an amount to be received in the event of a merger is set forth. This question is a specification of the general question—which has received a great deal of scholarly attention—whether, as a matter of sound policy, mandatory provisions are ever desirable in corporation law. *See generally Symposium: Contractual Freedom in Corporate Law,* 89 COLUM.L.REV. 1395 *et seq.* (1989). While this question is of general interest, we need not hazard any speculation

---

2. *See* Section 211 DGCL.

3. *See* Section 241 DGCL

4. *See* Section 251 DGCL

5. *See* Section 271 DGCL.

6. Although defendant has avoided the explicit statement that the plaintiffs have contracted away their appraisal rights by virtue of buying these shares, this is, for all purposes, the true effect of its position. Shareholders will not seek appraisal for shares if the maximum value of such shares has already been determined.

on whether mandatory terms are efficient in general, because this case deals only with the appraisal remedy for preferred stock and preferred stock is a very special case.[7] As is well understood, preferred stock can have characteristics of both debt and equity. To the extent it possesses any special rights or powers and to the extent it is restricted or limited in any way, the relation between the holder of the preferred and the corporation is contractual. *Ellingwood v. Wolf's Head Oil Refining Co.,* Del.Supr., 38 A.2d 743 (1944); *H.B. Korenvaes Investments, LP, et al. v. Marriott Corp., et al.,* Del. Ch., C.A. No. 12922, Allen, C., 1993 WL 205040 (June 9, 1993) ("rights of preferred stock are primarily but not exclusively contractual in nature.") While, as part of that contract, an issuer will owe the limited duty of good faith that one contractual party always owes to the other, with respect to those special preferences, etc., the issuer owes no duty of loyalty to the holders of the preferred. *E.g., H.B. Korenvaes, supra,* at 5; *Jedwab v. MGM Grand Hotels, Inc.,* Del. Ch., 509 A.2d 584 (1986).

All of the characteristics of the preferred are open for negotiation; that is the nature of the security. There is no utility in defining as forbidden any term thought advantageous to informed parties, unless that term violates substantive law. Particularly, there is no utility in forbidding the parties *creating* a preferred stock (the issuer, its advisors and counsel, and the underwriter and its counsel) from establishing a security that has a stated value (or a value established by a stated formula) in the event of stated contingencies.[8]

The general rule applies as with all contracting parties: that which is a valid contract will be enforced either specifically or through a damages action, unless the contract violates positive law or its non-performance is excused. I cannot conclude that a provision that establishes the cash value of a preferred stock in the event of a cash-out merger would violate the public policy reflected in Section 262, given the essentially contractual nature of preferred stock. Thus, the relevant question in this case is whether the instruments establishing the rights and preferences of these various series of preferred stocks do contractually limit the right of a holder to seek judicial appraisal in the event of a cash-out merger.

## IV. The Terms of the Designations

 I start with a preliminary generality. Since Section 262 represents a statutorily conferred right, it may be effectively waived in the documents creating the security only when that result is quite clearly set forth when interpreting the relevant document under generally applicable principles of construction.[9] *See Red Clay Educ. Ass'n v. Bd. of Educ. of Red Clay Consol. Sch. Dist.,* Del. Ch., C.A. No. 11958, Chandler, V.C., 1992 WL 14965 at *7 (Jan. 16, 1992), 1992 Del. Ch. LEXIS 9 at *20. Secondly, I note

7. There is no single explanation or set of explanations generally accepted why mandatory terms may be efficient in corporation law. Indeed there is disagreement whether they are efficient. But the most sensible explanations for them hinge on the costs that investors would otherwise be required to expend in evaluating and negotiating other arrangements when they make their initial investment and on the collective action or information problems that stockholders in public companies would face in passing upon any proposal to amend the certificate of incorporation. *See* Jeffrey N. Gordon, *The Mandatory Structure of Corporation Law* and Robert Romano, *The Tenuous Case for Mandatory Corporate Law,* both in 89 Colum.L.Rev. 1395, 1549 (1989).

8. Notably the explanation most often pressed forward for the efficiency of mandatory terms in corporate law is that the consent to modified terms of a corporate contract through a corporate election may (in the case of public corpora-

tions particularly) not really constitute the sort of agreement that we *ought* to enforce because of the existence of asymmetrical information and rational apathy on the part of widely disaggregated shareholders of public companies. *See* Lucian Arye Bebchuk, *Limiting Contractual Freedom in Corporate Law: The Desirable Constraints on Charter Amendments,* 102 Harv.L.Rev. 1820 (1989). But that view, if correct, would have little bite here where, at the formation stage, the preferred have in effect a bargaining agent in the underwriter and no mid-stream amendment is implicated.

9. The reference to original documents is intended to take notice of the fact that mid-term amendments do involve practically different circumstances, in which, under some circumstances, collective consent to waive the statutory appraisal right in exchange for a stated consideration *might possibly not demand the same deference.*

that ambiguity in these matters ought to be construed against the issuer who, as the analysis below certainly indicates, had it within its power clearly to establish the result for which it here contends. *Kaiser Alum. Corp. v. Matheson*, Del.Supr., 681 A.2d 392 (1996).

### A. The Series D Cumulative Preferred Shares.

■ The rights of stockholders of the Cumulative Preferred in the event of a merger are clearly stated in the Designations. Paragraph 4(b) of the Designations states:

> 4. *Rights on Liquidation or Cash–Out Merger.*
>
> . . .
>
> (b) In any merger . . . of [Holdings] with or into any other corporation . . . which . . . provides for the payment of only cash to the holders . . . each holder . . . shall be entitled to receive an amount equal to the liquidation preference [which is defined in paragraph 4(a) as $100,000 per share] of shares . . . held by such holder, plus an amount equal to accumulated and unpaid dividends on such shares . . ., and no more in exchange for such shares of Series D Preferred Stock. . . .

This provision specifically identifies the consideration that preferred shareholders will receive upon a cash-out merger of the type which occurred between Holdings and Ford Holdings Capital Corporation on December 31, 1995. It states explicitly that shareholders will be paid the liquidation preference—a specific, pre-determined dollar amount—and accrued and unpaid dividends—also a specifically determinable amount. The last phrase of the provision, stating that the holder is entitled to the consideration specified "and no more", reinforces the conclusion that the shareholders are not entitled to anything additional.

It is my judgment, then, that the terms of the Designations of the Cumulative Preferred clearly describe an agreement between the shareholders and the company regarding the consideration to be received by the shareholders in the event of a cash-out merger. There is no ambiguity in paragraph 4 regarding the value to be paid to shareholders if they are forced to give up their shares in a cash-out merger. The shareholders can not now come to this court seeking additional consideration in the merger through the appraisal process. Their security had a stated value in a merger which they have received.

### B. The Auction Preferred Series D.

■ The rights of the Auction Preferred Series D shareholders in the event of a cash-out merger are not as clearly expressed as those of the Cumulative Preferred shares. Most notably, there is no provision specifically governing (and limiting) "Rights on . . . Cash-out Merger." There are two interrelated provisions in the Designations which the corporation claims bear upon the rights of the shareholders to receive money in a cash-out merger.

The provisions state in relevant part:

> 3. *Dividends.*
>
> (b)(viii) [T]he Term Selection Agent *may give . . . notice* [shortly before an auction is held to set the terms of the shares for the next period] *specify[ing]* the [length of the] next succeeding Dividend Period . . . and *whether such shares shall be entitled under the circumstances set forth in paragraph 5(d)(iii) to a premium upon . . . [the] merger of [Holdings]* with or into any other corporation ("Merger Premium"). . . . (Emphasis added)

Preferred Section 5(d)(iii) deals with voting rights. It provides in pertinent part:

> 5. *Voting Rights.*
>
> . . .
>
> (d) *Right to Vote in Certain Events.*
>
> . . .
>
> (iii) Without the affirmative vote of the holders of a majority of the Outstanding shares of all series of Auction Preferred, Voting Preferred and Parity Preferred, voting as a single class, . . . [Holdings] may not . . . merge with or into any other corporation unless, in the case of a . . . merger, each holder of shares of Auction Preferred, Voting Preferred and Parity Preferred shall receive, upon such . . . merger, an amount in cash equal to the

liquid preference, Merger Premium, if any, and accumulated and unpaid dividends....

Under Holding's interpretation of the Designations, the merger consideration is fixed by the operation of these provisions, just as it was in the case of the Cumulative Preferred shares. I cannot agree, although that may have been the imperfectly expressed intention of the drafter.

Paragraph 5(d)(iii) assures that the preferred shareholders will be able *to vote as a class* to prevent the corporation from engaging in a merger that a majority of holders find disadvantageous, but that the class *loses that power if* the preferred receive specified consideration—the liquidation preference ($100,000), a merger premium, if any is authorized, and accumulated and unpaid dividends. Thus, the provision implies that the class has no need for class vote protection—no risk of exploitation—if the preferred receives in the merger consideration equal to the liquidation value, etc. Such an implication would of course be consistent with an understanding that that consideration was all that the preferred was entitled to receive. While this implication is possible, it is not clear or compelled. The voting provisions are, in the end, voting provisions. The stipulated absence of a class vote is too frail a base upon which to rest the claim that there has been a contractual relinquishment of rights under Section 262 or, to state it differently, that the consideration that acts to remove the rights to a class vote also is conclusively established to be the "fair value."

Clear and direct drafting, of the type found in Section 4 of the Designation of the Cumulative Preferred, can implement a term conclusively fixing merger consideration of preferred. But the court may not cut stockholders off from a statutory right by the level of indirection that the company's argument requires.

■ Two principles mentioned above support the determination that the "fair value" of Series D Preferred is not contractually limited by the terms of the Designation. The first is the principle that statutory rights should ordinarily be waived only by clear affirmative words or actions. *See Red Clay Educ. Ass'n v. Bd. of Educ. of Red Clay*

*Consol. Sch. Dist.*, Del. Ch., C.A. No. 11958, Chandler, V.C., 1992 WL 14965 at *7 (Jan. 16, 1992), 1992 Del. Ch. Lexis 9 at *20. The second is the principle that holds that ambiguity in a contractual document should be construed against the party that had the power to avoid the ambiguity. *See Kaiser Alum. Corp. v. Matheson*, Del.Supr., 681 A.2d 392 (1996).

A form of order consistent with the foregoing may be submitted on notice.