# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| IN RE APPRAISAL OF GOODCENTS HOLDINGS, INC. | ) ) ) ) | C.A. No. 11723-VCMR |

## MEMORANDUM OPINION

Date Submitted: March 9, 2017
Date Decided: June 7, 2017

Marcus E. Montejo, Kevin H. Davenport, and John G. Day, PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; *Attorneys for Petitioners.*

Brock E. Czeschin and Sarah A. Galetta, RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; Charles E. Elder, IRELL & MANELLA LLP, Los Angeles, California; *Attorneys for Respondent.*

**MONTGOMERY-REEVES, Vice Chancellor.**

This is an 8 *Del. C.* § 262 appraisal action stemming from a 2015 merger. The preferred stockholders of the target company were entitled to an approximately $73 million liquidation preference,[1] but the merger valued the target at approximately $57 million. According to the company's interpretation of its certificate of incorporation, the merger triggered the preferred stockholders' liquidation preference. As such, the preferred stockholders were paid the entire merger consideration, and the common stockholders received nothing. Petitioners are common stockholders who argue that the merger did not trigger the liquidation preference in the certificate of incorporation. Instead, they assert that the certificate of incorporation provides the preferred stockholders with a class vote or blocking right in the case of a merger. Petitioners, thus, contend that the fair value of the company should be allocated pro rata among the common stockholders and the preferred stockholders on an as-converted basis.

Petitioners and Respondent both move for partial summary judgment on the question of the proper allocation of the fair value of the company among the preferred and common stockholders. Based on the plain meaning of the certificate of incorporation, and because this Court previously considered nearly identical

---

[1] Respondent contends that the preferred stockholders' liquidation preference exceeded $73 million at the time of the merger. Resp't's Opening Br. 1. I need not and do not determine the actual value of the liquidation preference at this stage.

language and deemed it a voting provision rather than an entitlement to a liquidation preference, I hold that the certificate of incorporation provides only a voting right. Thus, I grant Petitioners' motion for partial summary judgment.

## I.     BACKGROUND

The facts in this opinion are undisputed and derive from the documents attached to the affidavits of Marcus E. Montejo and Charles E. Elder.  The parties have not argued that there exists a genuine dispute of material fact.  As such, under Court of Chancery Rule 56(h), I consider these cross motions for summary judgment on a stipulated record.[2]

### A.     Parties

Respondent GoodCents Holdings, Inc. ("GoodCents") is a privately held Delaware corporation that works with utility companies to optimize both residential and commercial consumption of power.  It merged into AM Conservation Group, Inc. ("AMCG") in 2015.

Dalford Lynn England is the founder and a common stockholder of GoodCents.  England was originally a petitioner in this case, but he has since been substituted by Chapter 11 bankruptcy trustee Janet G. Watts.[3]

---

[2]     Ct. Ch. R. 56(h).

[3]     Stipulated Order Vacating Stay, Substituting Real Party in Interest, and Setting Briefing Schedule, *In re Appraisal of GoodCents Hldgs., Inc.*, C.A. No. 11723-VCMR (Del. Ch. Jan. 19, 2017).

Petitioner Clayt Mason is the only other common stockholder of GoodCents.

**B.    Facts**

England founded GoodCents approximately 16 years ago.  In 2007, GFI Energy Ventures, LLC ("GFI") acquired GoodCents through a merger.  Under the terms of the merger, England and Mason collectively reinvested $8.7 million into GoodCents and became the sole owners of GoodCents common stock.  Their common stock represented 18.21% of the voting power of GoodCents.  Also in connection with the merger, GoodCents issued Series 1 Cumulative Convertible Preferred Stock (the "Preferred Stock") to OCM/GFI Power Opportunities Fund II, L.P. and OCM/GFI Power Opportunities Fund II (Cayman), L.P., two GFI affiliates (the "Preferred Stockholders").  Together, the Preferred Stockholders control the other 81.79% of GoodCents's voting power.

In the summer of 2015, the common stockholders received from GoodCents a Notice to Stockholders of Appraisal Rights and of Action by Written Consent of Less Than All of the Outstanding Shares of Capital Stock, dated July 24, 2015 (the "Notice").[4]  The Notice indicated that GoodCents had been sold to AMCG.  The merger consideration was $33 million in cash, subject to a working capital adjustment,[5] and GoodCents was permitted to use approximately $24 million in cash

---

[4]    Montejo Aff. Ex. 6.

[5]    Agreement and Plan of Merger § 2.6.1 (July 24, 2015).

on hand to redeem shares of the Preferred Stock.[6] The common stockholders seek appraisal because they received none of the approximately $57 million in cash paid to the Preferred Stockholders.

The GoodCents Amended and Restated Certificate of Incorporation (the "Certificate of Incorporation" or "Certificate") contains the Preferred Stockholders' rights and preferences.[7] Under the Certificate of Incorporation, the Preferred Stockholders are entitled to cumulative dividends as follows:

> Subject to clause 2.b below, the holders of shares of the Series 1 Cumulative Convertible Preferred Stock shall be entitled to receive dividends, out of any assets legally available therefor, prior and in preference to any declaration or payment of any cash dividend on the Common Stock or any other Junior Stock of this corporation, dividends per share computed at the rate of 8% per annum, compounded annually based on the Original Issue price . . . .[8]

But generally, the Preferred Stockholders cannot be paid a dividend unless the common stockholders receive an equal dividend per share on an as-converted basis. Clause 2.b states, in part, that:

> [E]xcept in a transaction governed by Section B.6 of this Article V, the corporation shall not declare, pay or set aside any dividends on shares of Series 1 Cumulative Convertible Preferred Stock unless the holders of the

---

[6]     *Id.* Sched. 5.1.2.

[7]     Montejo Aff. Ex. 1; Elder Aff. Ex. A (the "Certificate of Incorporation").

[8]     Certificate of Incorporation art. V, § B.2.a.

Common Stock then outstanding simultaneously receive a dividend on each outstanding share of Common Stock equal to the per share dividend (determined on an as if converted basis) to be declared, paid or set aside for the Series 1 Cumulative Convertible Preferred Stock.[9]

The exception to that rule is for transactions governed by section B.6 of article V, which includes the Preferred Stockholders' right to a liquidation preference (the "Liquidation Preference"). Section B.6 states, in part, that:

> a. In the event of any voluntary or involuntary liquidation, dissolution or winding up of the corporation, the holders of shares of Series 1 Cumulative Convertible Preferred Stock then outstanding shall be entitled to be paid out of the assets of the corporation available for distribution to its stockholders, before any payment shall be made to the holders of shares of Junior Stock [including Common Stock], by reason of their ownership thereof, an amount equal to the greater of (x) the Original Issue Price per share . . . plus any dividends declared and/or accrued but unpaid thereon . . . , or (y) such amount per share as would have been payable had each such share been converted into Common Stock pursuant to Section B.4 immediately prior to such liquidation, dissolution or winding up.
>
> b. If upon any such liquidation, dissolution or winding up of the corporation, the remaining assets of the corporation available for distribution to its stockholders shall be insufficient to pay the holders of shares of Series 1 Cumulative Convertible Preferred Stock the full amount to which they shall be entitled, the holders of Series 1 Cumulative Convertible Preferred Stock . . . shall share ratably in any distribution of the remaining assets and funds of the corporation in proportion to the respective amounts which would otherwise be payable in respect of

---

[9] *Id.* art. V, § B.2.b.

the shares held by them upon such distribution if all amounts payable on or with respect to such shares were paid in full.

c.     Without the affirmative vote of the holders of a majority of the Series 1 Cumulative Convertible Preferred Stock, the corporation [i.e. GoodCents] shall not . . . effect any merger or consolidation . . . unless the agreement or plan of merger . . . shall provide that the consideration payable to the stockholders of the corporation . . . shall be distributed to the holders of capital stock of the corporation in accordance with Sections B.6.a. and B.6.b above.[10]

This dispute focuses on the meaning of article V, section B.6.c.

## C.    Procedural History

Petitioners filed the petition for appraisal in this case on November 18, 2015, and Respondent answered on December 18, 2015. The parties conducted discovery, and Respondent moved for partial summary judgment on August 26, 2016. Petitioners cross moved for partial summary judgment on January 19, 2017, and the Court heard oral argument on the motions on March 9, 2017. This opinion resolves the parties' motions for partial summary judgment on the issue of the proper allocation of the fair value of GoodCents.

## II.    ANALYSIS

The Court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the

---

[10]    *Id.* art. V, § B.6.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[11]

The Delaware Supreme Court in *Cavalier Oil Corp. v. Harnett*[12] addressed the proper standard for valuing a dissenting stockholder's shares in an appraisal action. The Supreme Court held that dissenting stockholders are entitled to their "proportionate interest in a going concern."[13] "To this end the company must be first valued as an operating entity by application of traditional value factors, weighted as required, but without regard to post-merger events or other possible business combinations. The dissenting shareholder's proportionate interest is determined only after the company as an entity has been valued."[14]

"As a general rule, preferred stock has the same appraisal rights as common stock, but '[u]nlike common stock, the value of preferred stock is determined solely from the contract rights conferred upon it in the certificate of designation.'"[15] Thus, "when determining the fair value of preferred stock, the court must consider the

---

[11]     Ct. Ch. R. 56(c).

[12]     564 A.2d 1137 (Del. 1989).

[13]     *Cavalier Oil*, 564 A.2d at 1144 (quoting *Tri-Cont'l Corp. v. Battye*, 74 A.2d 71, 72 (Del. 1950)).

[14]     *Id.* (citation omitted).

[15]     *Shiftan v. Morgan Joseph Hldgs., Inc.*, 57 A.3d 928, 942 (Del. Ch. 2012) (quoting *In re Appraisal of Metromedia Int'l Gp., Inc.*, 971 A.2d 893, 900 (Del. Ch. 2009)).

contract upon which the preferred stock's value was based,"[16] which here is the GoodCents Certificate of Incorporation. "Corporate charters and bylaws are contracts among a corporation's shareholders."[17] "[T]he rules that govern the interpretation of statutes, contracts, and other written instruments apply to the interpretation of corporate charters and bylaws."[18] "[T]he construction and interpretation of an unambiguous written contract is an issue of law within the province of the court"[19] that can be decided on a motion for summary judgment.

The parties do not argue that the GoodCents Certificate of Incorporation is ambiguous. Both parties assert that the text unambiguously supports their interpretation. I agree that the Certificate of Incorporation is unambiguous, and, as such, I do not consider any extrinsic evidence.[20]

---

[16]    *Id.* at 942.

[17]    *Strougo v. Hollander*, 111 A.3d 590, 597 (Del. Ch. 2015) (quoting *Airgas, Inc. v. Air Prods. & Chems., Inc.*, 8 A.3d 1182, 1188 (Del. 2010)) (internal quotation marks omitted).

[18]    *Id.* (quoting *Sassano v. CIBC World Mkts. Corp.*, 948 A.2d 453, 462 (Del. Ch. 2008)) (internal quotation marks omitted).

[19]    *Bank of N.Y. Mellon v. Realogy Corp.*, 979 A.2d 1113, 1120 (Del. Ch. 2008) (quoting *Law Debenture Trust Co. of N.Y. v. Petrohawk Energy Corp.*, 2007 WL 2248150, at *5 (Del. Ch. Aug. 1, 2007)).

[20]    Respondent points to extrinsic evidence as proof that Petitioners believed that a merger would trigger the Preferred Stockholders' Liquidation Preference. Respondent argues that although the Certificate of Incorporation is unambiguous, the extrinsic evidence bolsters its case. *Cf. Shiftan*, 57 A.3d at 940. Further, Respondent asserts that if the Certificate is actually ambiguous, the extrinsic evidence proves that Respondent's interpretation is correct. Because I agree that

**A.** **The Unambiguous Text of the GoodCents Certificate of Incorporation Grants the Preferred Stockholders a Voting Right**

I hold that the plain meaning of the Certificate comports with Petitioners' position. The language of article V, section B.6.c. of the GoodCents Certificate is composed of two clauses that are important here. The first clause provides that "[w]ithout the affirmative vote of the [Preferred Stockholders], [GoodCents] shall not . . . effect any merger or consolidation . . . ."[21] The plain meaning of the first clause of section B.6.c is that without the Preferred Stockholders' approval, GoodCents cannot enter a merger at all. The second important clause provides, "unless the agreement or plan of merger . . . shall provide that the consideration payable to the stockholders of the corporation . . . shall be distributed to the holders of capital stock of the corporation in accordance with Sections B.6.a. and B.6.b above."[22] Respondent highlights the second clause in section B.6.c and argues that it unambiguously triggers the Liquidation Preference in the case of a merger. I disagree. That language follows the word "unless" and simply means that the Preferred Stockholders' right to block a merger by withholding their affirmative vote

---

the certificate is unambiguous, I need not consider the extrinsic evidence. Regardless, I would need a trial to resolve what the extrinsic evidence actually suggests because it raises disputes of fact.

[21]    Certificate of Incorporation art. V, § B.6.c.

[22]    *Id.*

falls away if the terms of the merger agreement "shall provide that the consideration payable to the stockholders of the corporation . . . or consideration payable to the corporation . . . shall be distributed to the holders of capital stock of the corporation in accordance with [the Preferred Stockholders' Liquidation Preference]."[23] No part of section B.6.c provides that whenever GoodCents enters a merger, the Preferred Stockholders shall be paid their Liquidation Preference.

Respondent also asserts that section B.6 must be read as a whole. It contends that section B.6.a covers situations after which GoodCents will cease to exist—such as a liquidation, dissolution, or winding up—and that section B.6.c covers situations after which the corporation will continue to exist as a going concern—such as a merger, consolidation, sale, or large offering of shares. Thus, Respondent argues that section B.6.c should be read to grant the Preferred Stockholders the Liquidation Preference like section B.6.a. I agree that section B.6.a is different from section B.6.c, as Respondent suggests. But I do not agree that the difference supports Respondent's position. To the contrary, a comparison of the text of section B.6.c to the text in the remainder of section B.6 supports Petitioners' position. The operative language in section B.6.a expressly requires payment of the Preferred Stockholders'

---

23      *Id.*

Liquidation Preference before any payment is made to junior stock in the case of a GoodCents liquidation, dissolution, or winding up. Section B.6.a states as follows:

> In the event of any voluntary or involuntary liquidation, dissolution or winding up of the corporation, the holders of shares of [Preferred Stock] then outstanding *shall be entitled to be paid out of the assets of the corporation* available for distribution to its stockholders, before any payment shall be made to the holders of shares of Junior Stock, by reason of their ownership thereof, an amount equal to [the Liquidation Preference].[24]

Such language specifically providing for a right to payment is noticeably absent from section B.6.c. Section B.6 of the Certificate of Incorporation, therefore, unambiguously grants the Preferred Stockholders a voting right but not a right to the Liquidation Preference in the case of a merger.[25]

## B. This Court's Reasoning in *In re Appraisal of Ford Holdings, Inc. Preferred Stock* Supports This Reading

Former Chancellor Allen considered language nearly identical to section B.6.c in *In re Appraisal of Ford Holdings, Inc. Preferred Stock*[26] and reached the same conclusion. In that case, certain preferred stockholders brought an appraisal action

---

[24]  *Id.* art. V, § B.6.a (emphasis added).

[25]  The GoodCents Preferred Stockholders did not attempt to exercise their blocking right of the merger with AMCG. Rather, they used their control of over 80% of the GoodCents vote to approve the merger. And Respondent does not assert that the Preferred Stockholders' voting right was frustrated. *Cf. Fletcher Int'l, Ltd. v. Ion Geophysical Corp.*, 2013 WL 6327997 (Del. Ch. Dec. 4, 2013) (awarding damages to a preferred stockholder whose right to consent to a note issuance was frustrated).

[26]  698 A.2d 973 (Del. Ch. 1997).

after a merger in which they were paid only their liquidation preferences. The preferred stockholders contended that the fair value of their shares was greater than the liquidation preferences. The certificate of designations for the Auction Preferred Series D stock stated as follows:

> Without the affirmative vote of the holders of a majority of the Outstanding shares of all series of Auction Preferred, Voting Preferred and Parity Preferred, voting as a single class, . . . [Holdings] may not . . . merge with or into any other corporation unless, in the case of a . . . merger, each holder of shares of Auction Preferred, Voting Preferred and Parity Preferred shall receive, upon such . . . merger, an amount in cash equal to the liquid preference, Merger Premium, if any, and accumulated and unpaid dividends . . . .[27]

The *Ford Holdings* Court held that that provision granted the preferred stockholders a right to vote as a class before a merger could be consummated. Chancellor Allen wrote that these "voting provisions are, in the end, voting provisions" as opposed to provisions related to the economic consideration to which preferred stockholders were entitled.[28] As such, the Court held that the provision did not clearly limit the consideration payable to the Auction Preferred Series D stockholders in the case of a merger. The Court held that the preferred stockholders were entitled to the fair

---

[27]      *Ford Hldgs.*, 698 A.2d at 978-79.

[28]      *Id.* at 979.

value of their shares under Section 262 because they had not contractually limited their appraisal rights.[29]

Respondent at oral argument attempted to distinguish *Ford Holdings* because the issue in that case was whether the consideration to which the Auction Preferred Series D stockholders were entitled was fixed at the liquidation preference or whether it could exceed that amount.[30] The issue was not whether the preferred stockholders were entitled to at least their liquidation preference—the issue here. But the *Ford Holdings* reasoning applies here as well. The Court held in *Ford Holdings* that the fair value owed to the preferred stockholders could exceed their liquidation preference because the certificate of designations provision in question did not limit the preferred stockholders' consideration.[31] The Court reasoned that the provision "assure[d] that the preferred stockholders [would] be able *to vote as a class* to prevent the corporation from engaging in a merger that a majority of holders find disadvantageous, but that the class *loses that power if* the preferred receive specified consideration . . . ."[32] Thus, while the issue was not identical to the issue presented here, the Court in *Ford Holdings* considered nearly identical language in

---

[29]     *Id.*

[30]     Oral Arg. Tr. 8.

[31]     *Ford Hldgs.*, 698 A.2d at 979.

[32]     *Id.*

13

a dispute regarding the fair value of preferred stock in an appraisal action. And the Court held that the language was merely a voting provision. Such a voting right is not a right to the Preferred Stockholders' Liquidation Preference in the case of a merger.

Respondent further argues that the operative language in *Ford Holdings* appeared under the heading "Voting Rights" in the Auction Preferred Series D certificate of designations.[33] Respondent asserts that the Court in *Ford Holdings* was influenced by the heading and did not need to meticulously consider the language. But Chancellor Allen did parse the language in *Ford Holdings* and held that it entitled the preferred stockholders "*to vote as a class*."[34] Further, section B.6 of the GoodCents charter is under a heading entitled "Liquidation, Dissolution or Winding Up," and those terms are not defined to include mergers.[35] Thus, the headings provide only limited guidance.[36] Regardless, the plain meaning of the language controls, and I agree with Chancellor Allen's reasoning in *Ford Holdings*

---

[33] Oral Arg. Tr. 10.

[34] *Ford Hldgs.*, 698 A.2d at 979.

[35] Certificate of Incorporation art. V, § B.6.

[36] *See Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 582 n.35 (Del. Ch. 1998) ("Although contract headings are not controlling evidence of the meaning of a contract's substantive provisions, they may be considered as additional evidence tending to support the substantive provisions.").

14

interpreting nearly identical language. The Certificate of Incorporation grants the Preferred Stockholders the right to a class vote but not a right to the Liquidation Preference in the case of a merger.

### C. Respondent Does Not Assert That the Preferred Stockholders' Voting Right Should Be Considered in Appraisal

Petitioners argue that the Preferred Stockholders' voting right cannot be considered in appraisal to reduce the fair value of the common stock. They cite the Delaware Supreme Court's opinion in *Cavalier Oil*, which held that "[t]he application of a discount to a minority shareholder is contrary to the requirement that the company be viewed as a 'going concern.'"[37] "Although Delaware law putatively gives majority stockholders the right to a control premium, *Cavalier Oil* tempers the realistic chance to get one by requiring that minority stockholders be treated on a pro rata basis in appraisal."[38] Respondent does not counter that the voting right provided in section B.6.c has value that should be separately considered in this appraisal action. Respondent asserts only that a merger triggers the Preferred Stockholders' Liquidation Preference in the Certificate of Incorporation. But I have held that the Certificate of Incorporation provides the Preferred Stockholders with only a voting right in the case of a merger. As such, Petitioners are entitled to their

---

[37]     *Cavalier Oil Corp. v. Harnett*, 564 A.2d 1137, 1145 (Del. 1989).

[38]     *In re Orchard Enters., Inc.*, 2012 WL 2923305, at *8 (Del. Ch. July 18, 2012).

15

proportionate share of the fair value of GoodCents considering the Preferred Stock on an as-converted basis.

## III. CONCLUSION

For these reasons, Petitioners' motion for partial summary judgment is granted, and Respondents' motion for partial summary judgment is denied.

**IT IS SO ORDERED.**