# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| MANTI HOLDINGS, LLC, MALONE MITCHELL, WINN INTERESTS, LTD., EQUINOX I. A TX, GREG PIPKIN, CRAIG JOHNSTONE, TRI-C AUTHENTIX LTD., DAVID MOXAM, LAL PEARCE, and JIM RITTENBURG,<br><br>        Petitioners,<br><br>    v.<br><br>AUTHENTIX ACQUISITION COMPANY, INC.,<br><br>        Respondent.<br><br>AUTHENTIX ACQUISITION COMPANY, INC.,<br><br>        Counterclaim Plaintiff,<br><br>    v.<br><br>MANTI HOLDINGS, LLC, MALONE MITCHELL, WINN INTERESTS, LTD., EQUINOX I. A TX, GREG PIPKIN, CRAIG JOHNSTONE, TRI-C AUTHENTIX LTD., DAVID MOXAM, LAL PEARCE, and JIM RITTENBURG,<br><br>        Counterclaim Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 2017-0887-SG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Date Submitted: May 14, 2020
Date Decided:  August 11, 2020

John L. Reed, Peter H. Kyle, and Kelly L. Freund, of DLA PIPER LLP, Wilmington, Delaware, *Attorneys for Petitioners/Counterclaim Defendants.*

Samuel A. Nolen, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: Andrew Hammond and Michelle Letourneau-Belock, of WHITE & CASE LLP, New York, New York, *Attorneys for Respondent/ Counterclaim Plaintiff.*

GLASSCOCK, Vice Chancellor

This litigation involves the Petitioners' demand for appraisal, and the Respondent's enforcement of a stockholders' agreement. The Petitioners are former stockholders in the target of an acquisition, the consummation of which triggered purported rights and responsibilities under the stockholders' agreement in question. The Petitioners sought appraisal of their stock. The Respondent, obviously, is the corporation in which they had held stock; the Respondent argued via defense and counterclaim that the Petitioners had forgone the right to appraisal via the stockholders' agreement. I agreed, in two opinions, with the Respondent.[1] Remaining are two issues. Does a loser-pays fee-shifting provision in the stockholders' agreement apply to the Petitioners in this post-merger action? And can the surviving corporation—a party to the stockholders' agreement—enforce that right against a stockholder? The parties have filed cross-motions on these issues. I answer these questions in the affirmative, and also find that the stockholders/Petitioners are entitled to prejudgment interest on the merger consideration.

## I. BACKGROUND

The parties' cross-motions for summary judgment are limited in scope to the Respondent's request for attorneys' fees and the Petitioners' request for interest on

---

[1] *Manti Holdings, LLC v. Authentix Acquisition Co.*, 2018 WL 4698255 (Del. Ch. Oct. 1, 2018), *reargument denied* 2019 WL 3814453 (Del. Ch. Aug. 14, 2019); *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 2019 WL 3814453 (Del. Ch. Aug. 14, 2019).

the merger consideration. This factual recitation is likewise limited to those facts necessary for resolution of these issues.

Respondent Authentix Acquisition Company, Inc. ("Authentix" or the "Company") is a private Delaware corporation.[2] The Petitioners were stockholders of Authentix.[3] This matter relates to the sale via merger of Authentix to a third-party entity in 2017.

In 2008, the Petitioners had all held stock in a prior entity, Authentix, Inc.[4] That year, Authentix, Inc. merged into Authentix, with two new shareholders—The Carlyle Group and J.H. Whitney & Co. (collectively, "Carlyle")—as the new majority owners.[5] In order to achieve the merger, the Petitioners, the new stockholders, and Authentix negotiated a stockholders' agreement, the Stockholders Agreement of Authentix Acquisition Company, Inc. (the "Stockholders Agreement"), consummation of which was a condition to the merger.[6] Also as a condition of the 2008 merger, the Petitioners agreed to roll over their interest in

---

[2] Verified Pet. For Appraisal Pursuant to Section 262 of the Delaware General Corporation Law, D.I. 1 ("Pet."), ¶ 1.

[3] *Id.* ¶ 3.

[4] Joint Stip. of Fact, D.I. 65 ("Joint Stip."), at ¶ 2. I note here that in my August 15, 2019 Memorandum Opinion, I stated, "the Petitioners were the sole owners of Authentix, Inc.," which Authentix pointed out is incorrect, though it does not change any outcome. According to the Joint Stipulation, "the Petitioners all held stock in Authentix, Inc.," and "Manti Holdings, LLC and Manti Resources, Inc. held a majority of the outstanding shares of Authentix, Inc." *Id.*

[5] *Id.* ¶ 3.

[6] *Id.* ¶¶ 3–4.

2

Authentix, Inc. into Authentix.[7]  Along with the Petitioners, Authentix was itself a party to the Stockholders Agreement.[8]

Several provisions of the Stockholders Agreement are pertinent here.

*First*, under § 3(e) of the Stockholders Agreement, the Petitioners agreed that "[i]n the event that . . . a Company Sale is approved by the Board" they would "consent to and raise no objections against such transaction . . . and . . . refrain from the exercise of appraisal rights with respect to such transaction."[9]  *Second*, under § 12, the parties agreed that "[t]his Agreement, and the respective rights and obligations of the Parties, shall terminate upon the . . . consummation of a Company Sale . . ."[10]  *Third*, under § 13(i), a so-called "loser pays" provision, the parties allocated fees in the case of litigation:

> In the event of any litigation or other legal proceeding involving the interpretation of this [Stockholders] Agreement or enforcement of the rights or obligations of the Parties, the prevailing Party or Parties shall be entitled to recover reasonable attorneys' fees and expenses in addition to any other available remedy.[11]

---

[7] *Id.* ¶ 3.

[8] Pet'rs'/Countercl.-Defs.' (1) Answering Br. in Opp'n to Resp't/Countercl.-Pl.'s Mot. for Summ. J. on Count III of Its Countercls. and (2) Pet'rs' Opening Br. in Support of Their Cross-Mot. for Summ. J., D.I. 81 ("Pet'rs' Opening Br."), Ex. A, Stockholders Agreement of Authentix Acquisition Company, Inc. ("Stockholders Agreement") ("This Stockholders Agreement . . . dated as of April 18, 2008, is entered into by and among Authentix Acquisition Company, Inc." and other signatories).

[9] *Id.* § 3(e).

[10] *Id.* § 12.

[11] *Id.* § 13(i).

On September 12, 2017, the Authentix board of directors approved a merger agreement (the "2017 Merger") to a third party.[12] The next day, September 13, 2017, Authentix sent its stockholders, including the Petitioners, a Confidential Information Statement and Notice of Action by Written Consent and Approval of Merger (the "Information Statement").[13] The Information Statement included the following request:

> The Company's Board of Directors . . . requests that you execute the Written Consent to waive any appraisal rights that you may have under Section 262 of the DGCL pursuant to your obligations set forth in the Company's Stockholders Agreement to which you are a party and to which you are bound.[14]

The Information Statement also directly addressed appraisal rights:

> The Company's stockholders who do not consent in writing to the Merger may be entitled to certain appraisal rights under Section 262 of the DGCL in connection with the Merger as described below. Stockholders who perfect their appraisal rights by following the procedures prescribed by Section 262 of the DGCL and who do not thereafter withdraw their demand for appraisal of such shares or otherwise lose their appraisal rights, in each case in accordance with the DGCL, will be entitled to receive the "fair value" of their shares, together with interest, if any, to be paid upon the amount determined by the Delaware Court of Chancery to be "fair value." **Stockholders who executed and delivered a written consent of stockholders to consent to the adoption of the Merger Agreement will not be entitled to**

---

[12] Aff. of Sarah A. Galetta, Esq. in Support of Resp't-Countercl. Pl.'s Br. in Support of Its Mot. for Determination of Entitlement to Appraisal and Partial Summ. J. on Entitlement Issues, D.I. 19 ("Galetta Aff."), Ex. 4, Agreement and Plan of Merger dated as of September 13, 2017 ("Merger Agreement"), *Recitals*.

[13] Galetta Aff., Ex. 5, Confidential Information Statement and Notice of Action by Written Consent and Approval of Merger ("Information Statement").

[14] *Id.* at 1.

4

**these rights.** **You are reminded that you have contractually agreed to refrain from exercising any appraisal rights pursuant to the Company Stockholders Agreement to which you are bound.**[15]

The holder of a majority of Authentix stock—namely, Carlyle—provided approval by written consent.[16] Authentix was the surviving corporation in the 2017 Merger.[17]

Toward the end of September and beginning of October 2017, the Petitioners sent appraisal demands to Authentix.[18] Authentix wrote to the Petitioners requesting the demands be withdrawn and their shares submitted for payment.[19] The Petitioners then filed this action, seeking statutory appraisal under Section 262 of the Delaware General Corporation Law (the "DGCL").[20] Authentix filed counterclaims and moved for summary judgment on the Petitioners' entitlement to appraisal, and the Petitioners moved to dismiss Authentix's counterclaims.[21]

---

[15] *Id.* at 11 (emphasis in original).

[16] Galetta Aff., Ex. 1, Written Consent in Lieu of a Special Meeting of the Stockholders of Authentix Acquisition Company, Inc. ("Written Consent"), at 1, 4–5.

[17] Merger Agreement, § 2.1(a)-(b) ("Upon consummation of the Merger, the separate corporate existence of Merger Sub shall cease and the Company, as the surviving corporation of the Merger . . . shall continue its corporate existence under the Delaware General Corporation Law . . . as a wholly owned subsidiary of Buyer."); Pet'rs' Opening Br., at 9 ("the Company [was] the 'surviving corporation'"); Res'p/Countercl. Pl.'s Opening Br. in Support of Its Mot. for Entry of Final Judgment Including Summ. J. on Count III of Its Verified Countercls., D.I. 78 ("Res'p's Opening Br."), at 25 ("The same Authentix Acquisition Company, Inc. that signed the Stockholders Agreement as a party was the surviving corporation of the Merger, and is the Respondent here.").

[18] Galetta Aff., Ex. 6.

[19] Galetta Aff., Ex. 8.

[20] *See* Compl.; 8 *Del. C.* § 262.

[21] Mot. for Determination of Entitlement to Appraisal and Partial Summ. J. on Entitlement Issues, D.I. 9; Pet'rs' Mot. to Dismiss Resp't's Verified Countercls., D.I. 7.

On October 1, 2018, I issued a Letter Opinion (the "2018 Opinion"), granting Authentix's Motion for Partial Summary Judgment and denying the Petitioners' motion to dismiss.[22] In the 2018 Opinion, I found that even though the Stockholders Agreement by its terms terminated as of the 2017 Merger, the Petitioners' obligations under § 3(e) of that contract—to refrain from exercising their appraisal rights—vested and survived the termination of the Stockholders Agreement.[23] I found that a Company Sale had occurred, and that as a result, "the Petitioners were bound contractually to consent and not object to the sale, which general duty includes a duty [to] refrain from exercise of appraisal rights."[24] Finally, I held that Authentix was permitted to enforce the vested, surviving rights in the Stockholders Agreement against the Petitioners, and that such enforcement did not conflict with the DGCL.[25] I held that the Petitioners, as signatories to the Stockholders Agreement, "agreed to forbear from exercising [their appraisal] right" as a matter of contract interpretation.[26]

---

[22] *Manti Holdings, LLC v. Authentix Acquisition Co.*, 2018 WL 4698255, at \*5 (Del. Ch. Oct. 1, 2018), *reargument denied* 2019 WL 3814453 (Del. Ch. Aug. 14, 2019).

[23] *Id.* at \*2–3.

[24] *Id.* at \*4 (internal quotation marks omitted). The parties agreed that a Company Sale occurred. *See id.* at \*2 ("the [Stockholders Agreement] provides certain contractual rights and duties arising in the context of a 'Company Sale'—a defined term that all parties agree occurred here.").

[25] *Id.* at \*4.

[26] *Id.*

6

The Petitioners moved for reargument, contending that stockholders cannot, via contract, validly waive their statutory appraisal rights.[27] That issue, I found, had not been waived, although it had not been a focus of the parties' Summary Judgment argument. I denied the reargument motion in a Memorandum Opinion on August 15, 2019 (the "2019 Opinion").[28] In that 2019 Opinion, I framed the issue thus: "Does the DGCL forbid the sophisticated owners of a corporation from negotiating a term as part of a merger agreement that binds them to a future sale and waives statutory appraisal rights? I conclude that it does not."[29] My analysis, among other case law, was informed by *In re Appraisal of Ford Holdings, Inc. Preferred Stock*.[30] There, this Court held that in the case of preferred stock, "properly expressed terms . . . may establish the consideration to which holders of the stock will be entitled in the event of a merger and, when the documents creating the security do so, that the amount so fixed or determined constitutes the 'fair value' of the stock for the purposes of the dissenters' rights under Section 262 of the [DGCL]."[31] Establishing such consideration, according to *Ford Holdings*, "effectively waived" the

---

[27] Pet'rs Countercl.-Defs.' Mot. For Reargument of the Court's Letter Op. Dated October 1, 2018, D.I. 39.

[28] *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 2019 WL 3814453, at *2 (Del. Ch. Aug. 14, 2019).

[29] *Id.* at *2.

[30] 698 A.2d 973 (Del. Ch. 1997).

[31] *Id.* at 974.

"statutorily conferred right" because it did so "quite clearly," and "statutory rights should ordinarily be waived only by clear affirmative words or actions."[32] Based on this reasoning, as well as other case law permitting the waiver of statutory rights, I found that "waiver of appraisal rights is permitted under Delaware law, as long as the relevant contractual provisions are clear and unambiguous."[33] Applying this to the motion for reargument, I found that "[t]he [Stockholders Agreement] clearly and unambiguously waives appraisal rights; therefore, it should be enforced," and that "such modification or waiver serves to supplement the DGCL, and is not inconsistent with, nor contrary to, the DGCL" as it pertained to the issue there, which was limited to the waiver of the statutory right of appraisal.[34]

Following resolution of the Motion for Reargument, the parties disputed a final order implementing my decisions. They disagree whether Authentix is entitled to attorneys' fees under the Stockholders Agreement, as well as whether the Petitioners are entitled to interest on the merger consideration for their shares. Ultimately, Authentix filed a Motion for Summary Judgment on Count III of its counterclaims, under which it seeks attorneys' fees.[35] The Petitioners filed a cross-

---

[32] *Id.* at 977, 979.

[33] *Manti*, 2019 WL 3814453, at *4.

[34] *Id.*

[35] Resp't-Countercl. Pl.'s Mot. for Entry of Final J. Including Summ. J. on Countercl. III, D.I. 77.

motion for summary judgment seeking the denial of those fees.[36] I heard argument on these cross-motions on May 14, 2020 and considered the matter fully submitted at that time.

## II. ANALYSIS

Summary judgment may be granted if there is "no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law."[37] The Court must not weigh evidence and instead must "determine whether or not there is any evidence supporting a favorable conclusion to the nonmoving party."[38] Where parties file cross-motions for summary judgment and "have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[39] Contract interpretation is often amenable to summary judgment because "the interpretation of a contract is a question of law."[40] Generally, only in ambiguous contracts where the contractual language is "fairly susceptible [to] different interpretation[s]" is

---

[36] Pet'rs-Countercl.-Defs.' Cross-Mot. for Summ. J. on Count III of Resp't-Countercl.-Pl.'s Countercls., D.I. 81.

[37] Ct. Ch. R. 56(c).

[38] *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2017 WL 3168966, at *2 (Del. Ch. July 26, 2017) (quoting *In re El Paso Pipeline Partners, L.P. Derivative Litig.*, 2014 WL 2768782, at *8 (Del. Ch. June 12, 2014)).

[39] Ct. Ch. R. 56(h).

[40] *Deloitte LLP v. Glanagan*, 2009 WL 5200657, at *5 (Del. Ch. Dec. 29, 2009).

9

summary judgment improper.[41]   However, "the intent of the parties as to [the contract's] scope and effect are controlling, and the court will attempt to ascertain their intent from the overall language of the document."[42]

*A. Attorneys' Fees*

Delaware operates by the American Rule, under which "litigants are expected to bear their own costs of litigation."[43]   Though this is the default, there are exceptions.  "An exception to the American Rule is found in contract litigation that involves a fee shifting provision.  In these cases a trial judge may award the prevailing party all the costs it incurred during litigation."[44]  A fee-shifting provision in an enforceable contract provides a clear exception to the default American Rule.

In this case, I am asked to enforce such a contractual right under a so-called "loser pays" provision.  The parties agreed to be bound by the Stockholders Agreement, which, as described, contains a fee-shifting provision in § 13(i):

> In the event of any litigation or other legal proceeding involving the interpretation of this [Stockholders] Agreement or enforcement of the rights or obligations of the Parties, the prevailing Party or Parties shall

---

[41] *ITW Glob. Invs. Inc. v. Am. Indus. Partners Capital Fund IV, L.P.*, 2017 WL 1040711, at *6 (Del. Super. Mar. 6, 2017) (quoting *GMG Capital Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012)).

[42] *Id.* (quoting *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 336 (Del. 2012)).

[43] *Beck v. Atl. Coast PLC*, 868 A.2d 840, 850 (Del. Ch. 2005).

[44] *Sternberg v. Nanticoke Mem'l Hosp., Inc.*, 62 A.3d 1212, 1218 (Del. 2013) (alterations omitted) (quoting *Mahani v. EDIX Media Group, Inc.*, 935 A.2d 242, 245 (Del. 2007)).

be entitled to recover reasonable attorneys' fees and expenses in addition to any other available remedy.[45]

As this Court has recognized, "freedom of contract is the rule and restraints on this freedom the exception. . ."[46] I note that the underlying action here is also a matter of contract: Authentix has sought, at each stage, to interpret and enforce various provisions of the Stockholders Agreement.

The Petitioners do not contest that the Stockholders Agreement provides a clear contractual obligation for the losing party to pay fees incurred by the prevailing party to enforce the contract against them. Instead, they argue that this contractual fee-shifting provision is unenforceable against them, for reasons having to do with statutory precedence, public policy, and equity. They believe the default American Rule should apply instead. After examining their arguments, I find that the parties' contractual choices regarding the shifting of fees should be enforced and the contractual rights for which the parties bargained in the Stockholders Agreement upheld.

---

[45] Stockholders Agreement, § 13(i).

[46] *Libeau v. Fox*, 880 A.2d 1049, 1057 (Del. Ch. 2005) *aff'd in pertinent part*, 892 A.2d 1068 (Del. 2006) (quoting *State v. Tabasso Homes*, 28 A.2d 248, 252 (Del. Gen. Sess. 1942)).

## 1. Authentix is Not Foreclosed from Enforcing § 13(i) of the Stockholders Agreement

The Petitioners do not dispute that the fee-shifting provision in § 13(i) of the Stockholders Agreement survived the termination of the Stockholders Agreement.[47] The parties' rights and responsibilities under the Stockholders Agreement terminated, per the Agreement, with a change of control. I previously found that the right to enforce the waiver of appraisal vested and continued beyond the merger; logically, the associated right to fees for such enforcement similarly survived.[48] The right that § 13(i) bestows—to reclaim fees expended enforcing other contractual rights—would be ineffective if it did not continue with other rights and obligations that survived termination.[49] In other words, the Petitioners contested the enforceability of the provision waiving appraisal that they agreed to in the Stockholders Agreement. They lost. They concede that, as part of that Stockholders Agreement from which they accepted the benefits, they agreed to the shifting of fees from the prevailing party onto the loser. Nonetheless, the Petitioners argue that

---

[47] Pet'rs' Opening Br., at 2 ("The issue here is not whether a fee-shifting provision, like an arbitration provision, survives termination of an agreement for disputes related to the agreement that are filed subsequent to its termination. The law is that both types of provisions generally do survive termination. . .").

[48] *Manti Holdings, LLC v. Authentix Acquisition Co.*, 2018 WL 4698255, at *2–3 (Del. Ch. Oct. 1, 2018).

[49] *See Medicalgorithmics S.A. v. AMI Monitoring, Inc.*, 2016 WL 4401038, at *29 (Del. Ch. Aug. 18, 2016) (enforcing indemnification provision in terminated agreement post-termination because "[r]efusing to indemnify expenses for a suit that was filed in response to a material breach . . . would render the indemnification provision ineffective. . .").

12

Authentix cannot enforce this provision, or, alternatively, that such a provision is statutorily prohibited.

The Petitioners first argue that they never contracted with Authentix "in the hands of a buyer."[50] Thus, the Petitioners argue, "the Company *in that state*"—*i.e.*, post-merger—was never an intended beneficiary of the Stockholders Agreement and so cannot enforce it.[51] This issue has already been litigated in way of the waiver provision, and decided contrary to the Petitioners' position; I will not repeat the analysis here. Briefly, I held previously that "[Authentix] has the authority to enforce the [Stockholders Agreement],"[52] and that "[Authentix], in seeking to enforce the [Stockholders Agreement], is not in contravention of the DGCL or public policy under these facts."[53] Such enforcement, I noted, with regard to waiver of appraisal rights, could only occur post-termination.[54] The same rationale applies here to the right to compensation for the successful enforcement of the contractual condition, and my earlier determinations are law of the case.

---

[50] Pet'rs' Opening Br., at 13–14.

[51] *Id.* at 2 (emphasis added).

[52] *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 2019 WL 3814453, at *2 (Del. Ch. Aug. 14, 2019).

[53] *Manti*, 2018 WL 4698255, at *4.

[54] As I found in my 2018 Opinion, "the exercise to be refrained from [i.e., appraisal] could *only* be consummated in the post-sale period." *Id.* at *3.

The Petitioners also argue that Authentix has no legal right to enforce the Stockholders Agreement because corporations are not proper parties to stockholder agreements under the DGCL.[55] This argument, too, rises and falls with my prior rulings: I found, in both prior opinions, that Authentix is a party to the Stockholders Agreement and is permitted to enforce it.[56] To the extent the Petitioners argue here that statutory provisions[57] make the Stockholders Agreement void or unenforceable *ab initio*, those arguments have either been made and rejected, with the rejection as law of the case, or forgone in the prior argument over the enforceability of the appraisal provision, and thus waived.[58]

In sum, the fee-shifting provision in § 13(i) survived termination, and the parties agree that Authentix is the prevailing party in this Action, as required to enforce that provision.[59]

The remaining issue has not yet been presented in this Action. Namely, can a Delaware corporation enforce a contractual provision to shift litigation fees onto

---

[55] Pet'rs' Opening Br., at 15–22.

[56] *Manti*, 2018 WL 4698255, at *4; *Manti*, 2019 WL 3814453, at *2.

[57] The Petitioners argue that the Stockholders Agreement is incompatible with Sections 151(a) and 218 of the DGCL.

[58] *See Manti*, 2018 WL 4698255, at *4 (rejecting Petitioners' argument that Stockholders Agreement was contrary to 8 *Del. C.* § 151(a)).

[59] Pet'rs' Opening Br., at 37 ("Petitioners do not dispute that, thus far, Respondent has been the prevailing party for purposes of Section 13(i) (if enforceable), because it predominated on the core issues resolved by the Court thus far.").

14

its stockholders, or former stockholders?  In *ATP Tour, Inc. v. Deutscher Tennis Bund*,[60] our Supreme Court reaffirmed that fee-shifting by contract, in exception to the American Rule, under which each litigant bears her own legal fees, was enforceable self-ordering by contractual parties.[61]  It also addressed whether such fee shifting could be adopted in a corporate by-law to shift fees in intra-corporate litigation:

> A fee-shifting bylaw . . . is facially valid.  Neither the DGCL nor any other Delaware statute forbids the enactment of fee-shifting bylaws.  A bylaw that allocates risk among parties in intra-corporate litigation would also appear to satisfy the DGCL's requirement that bylaws must relate to the business of the corporation, the conduct of its affairs, and its rights or powers or the rights or powers of its stockholders, directors, officers or employees.  The corporate charter could permit fee-shifting provisions, either explicitly or implicitly by silence.  Moreover, no principle of common law prohibits directors from enacting fee-shifting bylaws.[62]
>
> Delaware follows the American Rule, under which parties to litigation generally must pay their own attorneys' fees and costs.  But it is settled that contracting parties may agree to modify the American Rule and obligate the losing party to pay the prevailing party's fees.  Because corporate bylaws are contracts among a corporation's shareholders, a fee-shifting provision contained in a nonstock corporation's validly-enacted bylaw would fall within the contractual

---

[60] 91 A.3d 554 (Del. 2014).

[61] *Id.* at 558–60.

[62] The Court noted that fiduciary duties would apply to the adoption or enforcement of such by-laws.  *See id.*, at 558–59 (describing cases in which "[b]ylaws that may otherwise be facially valid [were not] enforced if adopted or used for an inequitable purpose.").

exception to the American Rule. Therefore, a fee-shifting bylaw would not be prohibited under Delaware common law.[63]

In reaction to *ATP,* the Delaware legislature enacted §§ 102(f) and 109(b) of the DGCL, which proscribe fee-shifting provisions in corporate charters and bylaws with respect to intra-corporate litigation, in recognition of the chilling effect such loser-pays provisions could have on the enforcement by stockholders of fiduciary duties.[64] The Petitioners argue that by extension or analogy, §§ 102(f) and 109(b) prohibit the contractual fee-shifting that the Respondent seeks to employ here.

The Petitioners note that our law observes a hierarchy of authority for documents concerning shareholder rights: the DGCL comes first, then the charter, then the bylaws, then contracts.[65] Provisions in lower-order documents cannot trump those in higher-order documents.[66] The Petitioners point to the fee shifting prohibitions of §§ 102(f) and 109(b), and argue based on these sections that

---

[63] *Id.* at 558 (internal quotations, alterations, and citations omitted).

[64] *See* Del. S.B. 75, 140th Gen. Assem. (2015) (synopsis) (included as Exhibit B to Resp't-Countercl. Pl.'s Reply Br., D.I. 85) ("In combination with the amendments to Section[] 109(b) . . . new subsection [102](f) does not disturb [the *ATP*] ruling in relation to nonstock corporations. In order to *preserve the efficacy of the enforcement of fiduciary duties* in stock corporations . . . new subsection [102](f) would invalidate a provision in the certificate of incorporation of a stock corporation that purports to impose liability upon a stockholder for the attorneys' fees or expenses of the corporation. . . Like the concurrent amendment to Section 102, the new last sentence of subsection [109](b) would invalidate a provision in the bylaws of a stock corporation that purports to impose liability upon a stockholder for the attorneys' fees or expenses of the corporation. . ." (emphasis added)).

[65] *Sinchareonkul v. Fahnemann*, 2015 WL 292314, at *6 (Del. Ch. Jan. 22, 2015); *Quadrant Structured Prod. Co., Ltd. v. Vertin*, 2014 WL 5465535, at *3 (Del. Ch. Oct. 28, 2014).

[66] *Sinchareonkul*, 2015 WL 292314, at *6.

enforcing a "loser pays" provision in a contract between a corporation and stockholders violates the hierarchy described above and is thus unenforceable. I find this unpersuasive, in the context of the matter before me, for several reasons.

*First*, nothing in the plain language of §§ 102(f) or 109(b) prohibits the fee-shifting at issue here. 8 *Del. C.* § 102(f) prohibits corporations from putting fee-shifting provisions in the corporate charter: "The certificate of incorporation may not contain any provision that would impose liability on a stockholder for the attorneys' fees or expenses of the corporation or any other party in connection with an internal corporate claim, as defined in § 115 of this title."[67] Similarly, 8 *Del. C.* § 109(b) prohibits fee-shifting provisions in bylaws: "The bylaws may not contain any provision that would impose liability on a stockholder for the attorneys' fees or expenses of the corporation or any other party in connection with an internal corporate claim, as defined in § 115 of this title."[68] Neither expressly prohibits fee-shifting provisions in contracts such as stockholder agreements.

*Second*, the expressed legislative intent shows that stockholder agreements were specifically carved out from these statutory prohibitions. "In the construction of a statute, this Court has established as its standard the search for legislative

---

[67] 8 *Del. C.* § 102(f).

[68] 8 *Del. C.* § 109(b).

17

intent."[69]   "The synopsis of the Bill [is] a proper source from which to glean legislative intent."[70]   The synopsis provided for § 102(f) and § 109(b) of the DGCL states that those statutes are "not intended, however, to prevent the application of such [fee-shifting] provisions pursuant to a stockholders agreement or other writing signed by the stockholder against whom the provision is to be enforced."[71]   The Petitioners' argument here is that this litigation—concerning the enforceability of a contractual waiver of a statutory right to appraisal—is "an internal corporate claim" for which fee shifting via charter or bylaw is forbidden, and thus, the Petitioners reason, it must be forbidden by contract as well.  Even assuming (without deciding) that an "internal corporate claim" is at issue here, the Petitioners' argument runs afoul of the clearly stated legislative intent that the statutory prohibition on fee-shifting not apply to stockholder agreements.

Thus, fee-shifting in the Stockholders Agreement does not violate the Delaware hierarchy described above.  The legislature's carve-out makes sense: charters and bylaws, to the extent contractual, are analogous to contracts of adhesion. The legislature has provided, by statute, that those documents cannot prescribe fee shifting *ex ante.*  Not so with stockholder agreements "signed by the stockholder

---

[69] *Zambrana v. State*, 118 A.3d 773, 775 (Del. 2015).

[70] *Id.* at 778 n.28 (quoting *Carper v. New Castle Cnty. Bd. of Ed.*, 432 A.2d 1202, 1205 (Del. 1981)).

[71] Del. S.B. 75, 140th Gen. Assem. (2015) (synopsis).

against whom the agreement is to be enforced," which the legislature provided would be treated otherwise.[72] It is the mechanism for the shifting of fees, not fee-shifting itself, that animates the statutory revisions. Here, the fee shifting mechanism was adopted by sophisticated parties—including the Petitioners—in a negotiated transaction. Because, as the legislature noted in the synopsis, stockholder agreements are of a different character than charters and bylaws, the prohibition is inapplicable, and there is no subversion of the hierarchy.

*Third*, the context of the fee-shifting here—litigation over stockholders' contractual agreement to waive appraisal rights—was not, I perceive, the legislature's animating concern. The matter before me does not involve an underlying allegation of breach of fiduciary duty, which was, I perceive, the legislature's focus in prohibiting fee-shifting in charters and bylaws.[73] A contractual fee-shifting provision for a losing allegation of breach of duty could have a perverse chilling effect on the exercise of stockholders' common law rights to the loyalty and

---

[72] Del. S.B. 75, 140th Gen. Assem. (2015) (synopsis).

[73] *See Solak v. Sarowitz*, 153 A.3d 729, 734 (Del. Ch. 2016) (noting the Corporation Law Council of the Delaware State Bar Association's comment that it proposed the amendments to § 102 and § 109 because "[p]ermitting fee shifting as a limitation on stockholder litigation would be functionally equivalent to permitting corporate charter or bylaw provisions limiting or eliminating the fiduciary duties of officers and directors," and noting the Council had "steadfastly declined to permit" such limitations); Del. S.B. 75, 140th Gen. Assem. (2015) (synopsis) ("In order to *preserve the efficacy of the enforcement of fiduciary duties* in stock corporations . . . new subsection [102](f) would invalidate a provision in the certificate of incorporation of a stock corporation that purports to impose liability upon a stockholder for the attorneys' fees or expenses of the corporation. . ." (emphasis added)).

care of corporate fiduciaries.[74]  But the question that an attempt to enforce such a provision would pose—whether stockholders may agree by contract to fee-shifting provisions for litigation over alleged breaches of fiduciary duty—is not before me. The subject of fee-shifting at issue here is quite different: litigation over an agreement by stockholders to refrain from the exercise of a statutory appraisal right.[75]

Having found that the fee-shifting provision is not prohibited by the DGCL, the remaining question, according to the Petitioners, "is whether a *corporation* (in contrast to a fellow stockholder)" can enforce such a provision contained in a private agreement.[76]  I have already found, as explained above, that Authentix was made a party to the Stockholders Agreement and had a right to enforce it consistent with the contractual intent, which finding is law of the case.

---

[74] *See Solak*, 153 A.3d at 738 ("[F]ew stockholders will rationally be able to accept the risk of exposure to millions of dollars in attorneys' fees to attempt to rectify a perceived corporate wrong, no matter how egregious.").

[75] *See Longoria v. Somers*, 2019 WL 2270017, at *3 (Del. Ch. May 28, 2019) ("Although the Delaware General Assembly subsequently adopted legislation foreclosing Delaware corporations from adopting fee-shifting provisions in their constitutive documents . . the reasoning of *ATP* demonstrates that . . . when a stockholder chooses to litigate, the stockholder can be held liable as a litigant for expenses associated with the proceeding, even if those expenses otherwise would be debts of the corporation.").  To the extent, if any, that the Stockholders Agreement purports to waive breaches of the controlling stockholders' fiduciary duties, and to the extent the Stockholders Agreement purports to bind purchasers or assignees of the stock of its signatories, the issue of the enforceability of such provisions is not before me and has not been litigated here.

[76] Pet'rs' Opening Br., at 23 (emphasis in original).

## 2. The Information Statement was Not Confusing

The Petitioners also argue that even if § 13(i) is enforceable by Authentix, the Information Statement sent to the Petitioners was unclear because it suggested appraisal rights might be possible.[77] Thus, the Petitioners argue, Authentix should be denied any fee shifting because it created the conditions under which the Petitioners reasonably decided to contest the appraisal waiver, a kind of "attractive nuisance" equitable defense to fee shifting. It is difficult to understand how such equitable considerations apply in this contractual context. In any event, I do not find the premise persuasive. In my 2018 Opinion, I held that the Stockholders Agreement was unambiguous, and that the Petitioners were unambiguously aware of their obligations:

> [T]he [Stockholders Agreement] is clear. No contracting party . . . would consider itself free to exercise appraisal rights in light of Board approval of a contractually compliant Company Sale. In that case, the contracting parties were bound to 'assent to' and to 'raise no objections against' the sale, and specifically to refrain from exercise of appraisal rights.[78]

The parties agree the 2017 Merger was a defined Company Sale. Thus, these obligations would have been clear to the Petitioners when they received the Information Statement. The Information Statement restated these obligations:

---

[77] *Id.* at 36–37.

[78] *Manti Holdings, LLC v. Authentix Acquisition Co.*, 2018 WL 4698255, at *3 (Del. Ch. Oct. 1, 2018).

The Company's stockholders who do not consent in writing to the Merger may be entitled to certain appraisal rights under Section 262 of the DGCL in connection with the Merger as described below. Stockholders who perfect their appraisal rights by following the procedures prescribed by Section 262 of the DGCL and who do not thereafter withdraw their demand for appraisal of such shares or otherwise lose their appraisal rights, in each case in accordance with the DGCL, will be entitled to receive the "fair value" of their shares, together with interest, if any, to be paid upon the amount determined by the Delaware Court of Chancery to be "fair value." **Stockholders who executed and delivered a written consent of stockholders to consent to the adoption of the Merger Agreement will not be entitled to [appraisal] rights. You are reminded that you have contractually agreed to refrain from exercising any appraisal rights pursuant to the Company Stockholders Agreement to which you are bound.**[79]

The Petitioners argue the Information Statement is confusing because it seeks an express written waiver and also sets out the statutory right; it states that non-assenting stockholders *would* have appraisal rights and could seek "fair value" in court. But, again, having signed the Stockholders Agreement, the Petitioners understood their unambiguous contractual obligations to assent and to "forbear from exercising that [appraisal] right."[80]

### 3. The Fees Were Reasonably Supported

Finally, the Petitioners argue that even if § 13(i) is enforceable, it only allows recovery for "reasonable attorneys' fees and expenses," and that the fees requested

---

[79] Stockholders Agreement, at 11 (emphasis in original).

[80] *Manti*, 2018 WL 4698255, at *4. In any event, the Petitioners were reminded of their contractual obligation by Authentix, but nonetheless pursued this litgation. They were not lured into this action like twelve-year-old boys tempted to swim in an abandoned quarry.

22

by Authentix are excessive.[81]  The Petitioners' argument is chiefly sticker shock.[82]

They point to their own considerably lower hours for the same litigation.  In

response, Authentix has described in detail the source of its attorneys' fees over the

course of this prolonged litigation.[83]  The parties' dispute does not, to my mind,

create a dispute of material fact that would preclude summary judgment as to

whether these fees are reasonable.  I do not find them, as the Petitioners do, excessive

on their face.  The litigation was long, hard-fought on both sides, and expensive.

The fees were incurred at reasonable rates.  The Respondent points out that it paid

for this litigation under a fee agreement, and the fees sought here have all been billed

to the client.  I do not find the fees unreasonable in this context.

---

[81] Pet'rs' Opening Br., at 37–39.

[82] The Petitioners also argue that they did not "lose" on all points; they point out that in its counterclaims, Authentix sought an order "requiring Petitioners to execute written consents approving the Merger."  Answer to Verified Pet. For Appraisal and Verified Countercl., D.I. 5, at 13.  The Petitioners responded to this request in their opening brief for their motion to dismiss. Pet'rs' Opening Br. In Support Of Their Mot. To Dismiss Resp't Authentix Acquisition Company, Inc.'s Verified Countercls., D.I. 20.  Although I ultimately denied the motion to dismiss, the parties agreed to a procedure that mooted the request for written consents.  This does not seem, to me, to change Respondent's "prevailing party" status, nor do the Petitioners suggest how the ambiguous outcome of this lone issue ought to affect the award.

[83] *See Salomon v. Kroenke Sports & Entertainment, LLC*, 2020 WL 3001540, at *1 (Del. Ch. June 03, 2020) ("Expenses (including attorneys' fees) are generally reasonable if they were 'actually paid or incurred[, and] . . . were . . . thought prudent and appropriate in the good faith professional judgment of competent counsel'" (quoting *Delphi Easter Partners Ltd. P'ship v. Spectacular Partners, Inc.*, 1993 WL 328079, at *9 (Del. Ch. Aug. 6, 1993))).

*B. Interest*

The parties also dispute whether the Petitioners are entitled to interest on the merger consideration, which, having petitioned for appraisal, they have not yet received.[84]  The parties contest whether this matter is properly described as an appraisal proceeding, in which case the Petitioners would be entitled to interest under 8 *Del. C.* § 262(h), or whether appraisal rights were waived *ex ante* such that it is not properly an appraisal action at all.  To my mind, this misses the mark.  The Petitioners were stockholders in an entity.  Through the 2017 Merger, the merger consideration became available to the Petitioners.  Nonetheless, they had significant questions regarding their contractual and statutory rights, and in good faith tested those rights by filing an appraisal petition.  The litigation required the resolution of several novel issues at the intersection of contract and corporate law, and has been lengthy.  The equities of the situation are this: the Petitioners were stripped of their stock and entitled to consideration therefore from the time of the 2017 Merger.  These funds of the Petitioners have been held by the Respondent for the duration of this now-lengthy action.  It would, to my mind, be inequitable not to award interest on that amount.  It is within this Court's discretion to award such interest.[85]

---

[84] Although not formally raised in the cross-motions for summary judgment, the parties raised the dispute over the right to interest in letters to the Court as well as at two separate oral arguments, and I consider it properly before the Court for resolution.

[85] *Boush v. Hodges*, 705 A.2d 243 (Del. 1998) ("In short, the law is that where a court of equity in its sound discretion finds that justice requires interest, it is the duty of that court to allow interest."

Therefore, and regardless of whether 8 *Del. C.* § 262(h) applies, I find that interest at the legal rate applies to the 2017 merger consideration from the date of the merger.

## III. CONCLUSION

The Respondent's Motion for Summary Judgment on Count III of Its Verified Counterclaims is granted, and the Petitioners' Cross-Motion for Summary Judgment is denied. The Petitioners are entitled to interest at the legal rate on the merger consideration due to them under the 2017 merger agreement. The parties should confer and submit a form of final order and judgment consistent with the 2018 Opinion, the 2019 Opinion, and this Memorandum Opinion.

---

(quoting *Hayward v. Green*, 88 A.2d 806, 810 (Del. 1952))); *ReCor Med., Inc. v. Warnking*, 2015 WL 535626, at *1 (Del. Ch. Jan. 30, 2015) ("The Court 'has broad discretion, subject to principles of fairness' in awarding interest." (quoting *Valeant Pharm. Int'l v. Jerney*, 921 A.2d 732, 756 (Del. Ch. 2007))).